Beidler et al. v. Fish.

JACOB BEIDLER ET AL.

v.

ROBERT H. FISH.

14    29
69    590

14       29
e115  ⁴525

1. QUESTIONS OF LAW.—Questions of law are for the court and it is error to submit them to the jury or to so frame instructions as to give an apparent license to the jury to determine such questions.

2. INSTRUCTIONS.—Instructions which submit it to the jury to determine what acts constitute an unlawful interference with a plaintiff's possession are improper.

3. LANDLORD AND TENANT—RIGHT OF POSSESSION.—Where a landlord has a tenant in possession under a lease expiring at a certain time and executes to a third party a lease of the premises to begin at the expiration of the term of the tenant in possession, the right of possession, at the expiration of the first lease, vests in the second lessee.

4. CANCELLATION OF LEASE—SURRENDER OF TERM.—Where a landlord executes to a party a lease, not under seal, of premises to begin at the expiration of the term of the tenant in possession of the premises, and such lease is surrendered by said party before the time for his term to commence, such surrender of the lease, if made with the intention of terminating or canceling the tenancy, and if such intention is assented to and participated in by the lessor, is valid as a surrender of the term.

5. AGENCY—INSTRUMENTS UNDER SEAL.—An agent can execute a sealed instrument for and on behalf of his principal only when his authority so to do is in writing and under seal. Where agents' authority is sufficient to enable them to execute a parol lease which would be binding upon their principals, their unauthorized use of a seal can not convert such parol lease into a specialty.

6. INSTRUCTIONS—EVIDENCE.—Where instructions discussed the doctrine applicable to sealed instruments and this was based upon and warranted by no evidence, such instructions were improper.

APPEAL from the Circuit Court of Cook county; the Hon. WILLIAM H. BARNUM, Judge, presiding.    Opinion filed November 16, 1883.

This was an action of trespass brought by Robert H. Fish against Jacob Beidler and four others for breaking and entering the plaintiff's store and basement and taking and carrying away divers goods, chattels, furniture, etc., of the plaintiff. The defendants among other things alleged that said plaintiff was in possession of said premises, under a certain lease from

defendant, Jacob Beidler, and one Henry Beidler, and justified said trespasses under certain provisions in said lease. Afterward a stipulation was made by the parties that, on the trial of the cause, the defendants should be permitted to give in evidence any matter of defense with the same effect as though such defense were specially pleaded.

The controversy grows out of an attempt on the part of the defendants to re-enter and take forcible possession of said premises after the expiration of the term for which they had been let to the plaintiff by said lessors. On the trial, the evidence as to whether the plaintiff held said premises under an oral or a written lease was conflicting, but the defendant gave evidence tending to show that he was in possession under a certain lease in writing executed by said Jacob Beidler and Henry Beidler to him, bearing date March 21, 1881, demising said premises for the term of one year from May 1, 1881, which said lease, after covenanting that said lessee would yield up said premises to the lessors at the expiration of said term, contained among other things also the following covenants:

" It is expressly understood and agreed by and between the parties aforesaid, that if the rent above reserved, or any part thereof, shall be behind or unpaid on the day of payment, whereon the same ought to be paid as aforesaid, or if default shall be made in any of the covenants or agreements herein contained, to be kept by the said party of the second part, his executors, administrators and assigns, it shall and may be lawful for said party of the first part, their heirs, executors, administrators, agent, attorney or assigns, at their election, to declare said term ended, and into the said premises or any part thereof, either with or without process of law, to re-enter, and the said party of the second part, or any other person or persons occupying in or upon the same, to expel, remove and put out, using such force as may be necessary in so doing, and the said premises again to re-possess and enjoy as in their first and former estate.

"And if at any time said term shall be ended at such, election of said party of the first part, their heirs, executors

Beidler et al. v. Fish.

administrators or assigns as aforesaid, or in any other way, the said party of the second part, the executors, administrators and assigns, do hereby covenant and agree to surrender and deliver up the said above described premises and property peaceably to said party of the first part, their heirs, executors, administrators and assigns, immediately upon the determination of the said term as aforesaid; and if he shall remain in possession of the same one day after any such default, or after the termination of this lease in any of the ways above named, he shall be deemed guilty of forcible detainer of said premises under the statute, and he shall be subject to all the conditions and provisions above named and to eviction, and removal, forcibly or otherwise, with or without process of law, as above stated."

The trespasses complained of were committed on the 8th day of May, 1882, after the expiration of the term granted in said lease. The evidence at the trial tended to show that some time prior to the expiration of said lease, the lessors, by their agents, Griffin & Dwight, entered into an agreement with Chapin & Gore to lease said premises to them for the term of three years from May 1, 1882, and that a written lease was drawn up in accordance with such agreement, and executed by Chapin & Gore on their own behalf, and by said Griffin & Dwight on behalf of the lessors; but the evidence also tended to show that Chapin & Gore never entered into possession of said premises under said lease, but that on learning, at or shortly before the commencement of their term, that lessors would be unable to put them into possession on the first day of May, surrendered their lease to said lessors, and that said lease was thereupon destroyed, upon the understanding between both parties that the contract of leasing between them should be annulled. The bill of exceptions recites that said lease to Chapin & Gore was read in evidence, but though purporting to embody all the evidence given at the trial, the bill of exceptions contains no copy of said lease, and no statement of its contents.

At the instance of the plaintiff, the court gave to the jury the following instructions:

Beidler et al. v. Fish.

1. "The court instructs the jury, that this is an action of trespass brought by the plaintiff against the defendants for forcibly evicting him from the premises described in the declaration, and in order to maintain such action as against any defendant, it is only necessary for the plaintiff to prove that he was in the actual and peaceable possession of the property upon which the trespass is alleged to have been committed, and that such defendant unlawfully interfered with such possession, or caused unlawful interference therewith.

2. "The court further instructs the jury, that when evidence to the contrary is wanting, a person in the actual peaceable possession of premises is presumed to be there rightfully, and no one, not even the owner of the pr᷈ 'erty, has a right to go upon the premises and forcibly eject ᴜ ᴇ person in possession, or remove his property therefrom, against his will, unless the person so entering has some legal process from a court of competent jurisdiction, authorizing him so to do, or is authorized so to do by the party in possession, by license in a lease or otherwise. And even though the possession of land be wrongfully held, as if a tenant willfully hold over after the termination of his lease, this will not justify even the owner of the property in entering and taking possession forcibly against the will of the person in possession, unless the person so entering has legal process or license and authority as above stated.

3. "The jurors are instructed as a matter of law, that any and all persons who incite, encourage, advise or direct unlawful acts, are liable as principals for such acts to the same extent as though they actually committed the acts themselves; and it is also the law, that what one does by an agent is the same as if done by himself; and if the jury believe from the evidence that the defendant, Jacob Beidlc., shortly before the alleged trespasses complained of in the declaration, unlawfully employed or directed the employment of any other person or persons to expel plaintiff from the premises mentioned in the declaration, and that the person or persons so employed unlawfully committed the acts complained of in the declaration in pursuance of such employment, then said defendant,

Beidler et al. v. Fish.

Jacob Beidler, is liable for all such acts to the same extent as though he had done the same acts himself, but is not liable to a recovery in this action unless you believe from the evidence that the acts done or authorized, if authorized by him, were unlawful.

6. "The jury are instructed as a matter of law, that if a landlord has a tenant in possession under a lease expiring at a certain time, and executes to a third party a lease of the premises, to begin at the expiration of the term of the tenant in possession, then the right to the possession vests at the expiration of the first lease, in the second lessee; and if the jury believe from the evidence that the plaintiff executed the lease in evidence, dated March 21, 1881, and was in possession under it on the 2th day of April, 1882, and continued in such possession until after the time of the alleged trespasses, and that on the 17th of April, 1882, the Beidlers, by Griffin & Dwight, their agents, signed said last mentioned lease, and sent it to Chapin & Gore to be signed, and that they, before May 2, 1882, executed it and delivered it to the Beidlers or their agents as a lease accepted and executed by them, the said Chapin & Gore, then Chapin & Gore, and not the Beidlers, were entitled to the possession of the premises on and after the 2d day of May, 1882, and in that case, neither the Beidlers nor their agents had any right on May 8, 1882, to make an entry into said premises, no matter what conditions were in the lease to the plaintiff.

8. "The jury are instructed as a matter of law, that the cancellation of or destruction of a lease for a term of years, by the mutual consent of the parties, does not divest the lessee of his term, when the lease is under seal, and all the remedies and rights thereunder to either of the parties are left the same as though the lease had not been destroyed; and if the jury believe from the evidence that the lease by Beidlers to Chapin & Gore was made, signed and delivered as set forth in the foregoing instruction, its subsequent destruction by tearing it up merely, would not revoke it or impair its validity, or the rights of Chapin & Gore to possession thereunder."

Proper exceptions were preserved by the defendants to each

Beidler et al. v. Fish.

of the foregoing instructions, and the jury thereupon found the defendants guilty, and assessed plaintiff's damages at $650, for which sum and costs the court, after overruling the defendant's motion for a new trial, gave judgment for the plaintiff.

Messrs. E. & A. VAN BUREN, for appellants; cited Ambrose v. Root, 11 Ill. 497.

The action *quare clausum fregit* can not be maintained where the plaintiff has given the defendant the right to enter: Page v. De Puy, 40 Ill. 506.

Mr. E. A. SHERBURNE and Mr. F. L. SALISBURY, for appellee; as to instructions, cited P. M. & F. Ins. Co. v. Anapow, 45 Ill. 86; City of Chicago v. Scholten, 75 Ill. 468.

A general exception to a series of instructions is of no avail if *any* of the instructions are good: Hayward v. Catton, 1 Bradwell, 577; Haskins v. Haskins, 67 Ill. 446; Lincoln v. Claflin, 7 Wall. 132; Ellis v. The People, 21 How. Pr. R. 356; State v. Chapin, 10 La. An. 458-9; Goodwin v. Perkins, 39 Vt. 605; Redman v. Malvin, 23 Ia. 296; Davenport Gas Co. v. City of Davenport, 13 Ia. 229; Hart v. Renesselear, etc., R. R. Co., 4 Seld. 37.

BAILEY, J. The only questions we find it necessary to consider in this case, arise upon the instructions given to the jury at the instance of the plaintiff. The first and third instructions are clearly objectionable in submitting to the jury mere questions of law. The first instruction tells the jury that in order to recover, it was only necessary for the plaintiff to prove that he was in the actual and peaceable possession of the premises upon which the trespass is alleged to have been committed, and that the defendants unlawfully interfered with such possession, or caused unlawful interference therewith. Here it was left to the jury to say what acts constituted an unlawful interference with the plaintiff's possession. The third instruction in terms submitted to the jury to find, from the evidence, whether defendant Beidler unlawfully employed or directed the employment of

Beidler et al. v. Fish.

any other person or persons to expel the plaintiff from said premises, and whether the person or persons so employed unlawfully committed the acts complained of in the declaration; and again, whether the acts done or authorized by said Beidler were unlawful. Language more clearly and directly submitting to the jury to determine what was and what was not unlawful, could scarcely be employed.

It is true the court, in the second instruction, attempted to define the rights of persons in peaceable possession of premises, and to point out the circumstances under which it would be wrongful to interfere with or expel them, but the errors in the first and third instructions were not thereby cured. In those instructions no reference is made to the rules of law laid down in the second instruction, and the jury are not limited in determining what was and what was not lawful, to the propositions covered by that instruction. Questions of law are for the court, and it is error to submit them to the jury, or to so frame the instructions as to give an apparent license to the jury, to take the determination of such questions into their own hands.

The sixth instruction holds, and we think correctly, that where a landlord has a tenant in possession under a lease expiring at a certain time, and executes to a third party a lease of the premises, to begin at the expiration of the term of the tenant in possession, the right of possession, at the expiration of the first lease, vests in the second lessee. This is in accordance with the decision in Gazzolo v. Chambers, 73 Ill. 75, where it is held that in such case the tenant alone must bring the action, and that the landlord is not entitled to possession, and can not recover the premises. And in this case, if it is true that at the time the defendants attempted to re-enter under the covenants in the lease to the plaintiff, there was a valid outstanding lease of said premises from the Beidlers to Chapin & Gore, for the term of three years from the expiration of the plaintiff's lease, the right of possession was in Chapin & Gore, and they alone were entitled to assert such right as against the plaintiff.

The instruction, however, is erroneous, in assuming that

if the lease to Chapin & Gore was once executed by the parties, it continued to be a valid subsisting lease at the date of the attempted re-entry, and in ignoring all the evidence in the case tending to show that, prior to that time, it had been surrendered by Chapin & Gore, and terminated by the mutual assent of the parties. The court seems to have proceeded upon a theory, more fully stated in the eighth instruction, that if the lease was once executed, its subsequent cancellation or destruction, though by the mutual assent of the parties, did not divest Chapin & Gore of the term thereby created.

It is held in England under the Statute of Frauds, that the destruction or cancellation of a lease has no operation as a surrender of the term. It is to be observed, however, that the third section of the English statute provides in terms that no leases of terms of years shall be surrendered, unless it be by deed or note in writing, signed by the party so surrendering, and in this country, in the States where this provision of the English statute has been adopted, the same rule prevails. But in our Statute of Frauds this provision has been omitted, and as was said in McKenzie v. Lexington, 4 Dana, 129, where the Statute of Frauds was in this respect identical with ours, "its omission in our statute, which is substantially copied from the English statute, is evidence of an intention on the part of our legislature to drop this formality in surrenders." In the case here cited, it is held that a parol surrender of the lease with the possession of the premises would be valid, and upon this point said case is referred to with approval by our Supreme Court in Baker v. Pratt, 15 Ill. 568. If the lease were under seal, it may be that a different rule growing out of its nature and incidents as a specialty would apply, but it is no part of the hypothesis of the sixth instruction that the instrument was executed under seal.

It is true, the cancellation of the lease in this case was accompanied by no surrender of the premises, as in McKenzie v. Lexington, for the very excellent reason that Chapin & Gore had never been in possession, and so far as appears from the hypothesis contained in the instruction, the time for the term to commence may not have arrived when the lease was

canceled. The lease was the only tangible thing in their possession which they could surrender, and we see no reason why such surrender, if made with the intention of terminating or canceling the tenancy, provided such intention was assented to and participated in by the lessors, was not valid as a surrender of the term. Apart from the provisions of the Statute of Frauds, the parol surrender of a term is valid, and as was said by Lord Chief Baron Gilbert in Magennis v. Mc-Collogh, Gilb. Cas. 235, "The cancellation of a lease was a sign of a surrender before the Statute."

It follows from what we have said that the eighth instruction also is erroneous. In the introductory part of the instruction, however, there is an attempt to limit the doctrine announced to cases where the lease is under seal, though, in the subsequent part of the instruction, it is held that if the Chapin & Gore lease was made, signed and delivered as set forth in "the foregoing instruction," its subsequent destruction by tearing up, would not revoke it or in any way impair its validity or the rights of Chapin & Gore to possession thereunder. The only preceding instruction in which the execution of the Chapin & Gore lease is referred to is the sixth, and in that no reference is made to its being under seal. The instruction, therefore, is not aided by the general statement of the rule applicable to sealed instruments.

But we are unable to find in the record any evidence that said lease was executed under seal. The lease does not appear in the record, and so we can not, by inspection of the instrument itself, ascertain the manner of its execution. There is evidence tending to show that it was signed by the firm of Chapin & Gore, and that the lessors' names were subscribed to it by Griffin & Dwight, their agents, but it does not appear that either party affixed a seal to it. But even if Griffin & Dwight, in executing it for their principals, did make use of a seal, the instrument did not thereby become a specialty. An agent can execute a sealed instrument for and on behalf of his principal, only when his authority so to do is in writing and under seal. We find no evidence that the authority of Griffin & Dwight was under seal or even in

writing, but it is affirmatively shown to have been merely oral. Their authority was doubtless sufficient to enable them to execute a parol lease, which would be binding upon their principals, but their unauthorized use of a seal could not convert such parol lease into a specialty. So far then as the instruction discussed the doctrine applicable to sealed instruments, it was based upon and warranted by no evidence in the case.

We would not be understood as laying down any rule in relation to the surrender of a term where the lease is under seal, as that question does not arise upon this record, but for the errors in the instructions above pointed out, the judgment will be reversed and the cause remanded.

Judgment reversed.