DETERMINED IN THE

## FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1920.

---

Anne O. Thompson et al., Heirs at Law of John Thompson, Deceased, Appellants, v. Western Casket Company, Appellee.

## Gen. No. 24,824.

1. LANDLORD AND TENANT, § 19*—*when lease not established.* In an action for rent against the Western Casket Company by the heirs of T who leased the premises to the casket company and worked for it, when it was set up as a defense that a new company was formed called the Western Casket and Undertaking Company and that, by mutual consent, the original lease was canceled and an oral lease made to the undertaking company, the fact that the widow of T, in answer to a question "Who occupied the premises" replied "My husband; he took care of it; he worked for the Western; they rented the store, you know," falls short of proving the new lease and is as consistent with the theory that the casket company rented the store as that the undertaking company rented it.

2. EVIDENCE, § 164*—*when letter self-serving.* In an action by the heirs of a lessor for rent, a statement in a letter written by the defendant to such heirs that it was understood defendant would be

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

(184)

expected to lease the premises only so long as decedent continued to be its manager, was a self-serving declaration, not binding on plaintiffs.

3. LANDLORD AND TENANT, § 319*—*when prima facie case established in action for rent.* In an action by the heirs of a lessor for rent under a written lease, the lease made a prima facie case for plaintiffs and the burden was upon defendant to show the only matter of defense, that the lessor agreed to and did cancel the lease and let the premises to another company.

4. LANDLORD AND TENANT, § 449*—*what considered on claim that lease was canceled.* In an action upon a lease by the heirs of the lessor, in which defendant contended that the lease had been canceled by mutual consent before the death of the lessor, the fact that the lease was in the possession of plaintiffs, neither having been delivered up nor physically changed, was significant.

5. LANDLORD AND TENANT, § 452*—*right to surrender verbally under sealed lease.* In this State a written lease, although under seal, may be surrendered by verbal agreement of the parties.

6. LANDLORD AND TENANT, § 454*—*inference of agreement to surrender lease.* The rule that an agreement to surrender a written lease may be inferred from the conduct of the parties is based upon the principles of estoppel, and the conduct proved must be such as is inconsistent with the relation of landlord and tenant.

7. LANDLORD AND TENANT, § 449*—*surrender by lessee who never had possession.* A lessee who never had possession under the lease could not make a technical surrender of the estate conveyed.

8. LANDLORD AND TENANT, § 310*—*when lessor not estopped to recover rent.* In an action for rent by the heirs of the lessor, evidence *held* not to establish an estoppel of the lessor or his heirs.

9. LANDLORD AND TENANT, § 449*—*what does not show surrender of lease.* In an action for rent against a casket company in which it was contended that the written lease was canceled by mutual consent and an oral lease made to an undertaking company, the fact that all the parties knew that the casket company never went into possession and that the rent, when paid, was paid by the undertaking company, was as consistent with the theory that the undertaking company was an assignee of the lease or a sublessee thereunder as with the theory that a new lease was entered into and the old one surrendered.

10. LANDLORD AND TENANT, § 402*—*when provision against subleasing not inconsistent with theory of sublease.* The fact that a lease contained a provision against subletting without the consent of the lessor is not inconsistent with the view that a sublease was made, as such provision was for the benefit of the lessor exclusively.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

**11.** LANDLORD AND TENANT, § 449*—*when evidence insufficient to show cancellation of lease.* Evidence *held* insufficient to establish a mutual agreement for the cancellation of a lease and for a reletting to another lessee.

**12.** LANDLORD AND TENANT, § 418*—*effect of assignment of lease on relations of lessor and lessee.* A lessor and lessee are in privity of estate and privity of contract and an assignment of the lease will destroy the privity of estate but not the privity of contract and the lessee will still be liable on its written covenant to pay rent.

**13.** LANDLORD AND TENANT, § 453*—*when acceptance of rent from third person not a waiver of rights.* In an action by the heirs of a lessor against the lessee for unpaid rent under a written lease, *held* that plaintiffs were entitled to a holding as a proposition of law, that, by a third party taking possession of the premises and paying rent to the lessor they waived none of their rights under the lease, in the absence of proof of any agreement as to the cancellation or surrender by the lessee of the lease in question.

Appeal from the Municipal Court of Chicago; the Hon. HARRY OLSON, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Reversed and remanded with finding of facts and judgment entered here. Opinion filed March 9, 1920. *Certiorari* denied by Supreme Court (making opinion final).

HENRY H. ERLAND and E. G. LANCASTER, for appellants.

WILLIAM G. WISE and WORTH E. CAYLOR, for appellee.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

The appellants are heirs at law of John Thompson. They brought suit against defendant, appellee, in the municipal court of Chicago on a written lease which contained a power to confess judgment for rent which might become due to the lessor or his assignees by the terms of the lease. Under this power judgment was confessed November 16, 1916, for $1,208.60, together with attorney's fees.

The *narr.* set up the making of the lease from

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number

John Thompson to defendant for a term beginning on the 1st day of February, 1910, and ending on the 31st day of January, 1915, at a rental of $50 per month, payable on the first day of each month in advance. It also alleged that 21 months' rent was due and payable, but still in arrears and unpaid. The defendant afterwards filed an affidavit of merits, and the judgment was opened up. This affidavit set up by way of defense that defendant had not occupied the premises during the time for which rent was claimed, and that, after the execution of the lease, the lessor had entered into an agreement with the Western Casket and Undertaking Company, another corporation, whereby Thompson, the lessor, was employed to conduct an undertaking business upon the leased premises "and for a mutual consideration then and there received, the said defendant and the said John Thompson agreed to and did cancel the said written lease, and thereupon the said Thompson let and rented said premises to the Western Casket and Undertaking Company, at a rental of $50 per month, so long as he should remain in the employ of the Western Casket and Undertaking Company * * *."

The affidavit further alleges that Thompson entered upon the performance of this agreement and continued to perform it until his death. Upon trial by the court, finding and judgment for defendant were entered.

Upon an appeal to this court the judgment of the trial court was reversed with a finding of fact and judgment here for plaintiffs. Upon a petition for rehearing by appellees, such rehearing was granted.

The material facts are not disputed. The written lease is in evidence. It was executed January 8, 1910. It was signed by the defendant Western Casket Company by its president, D. S. Sattler and attested by its secretary. It is under seal. It provided, among other things, that the lessor would not allow the premises to be occupied in whole or in part by other per-

sons, and would not sublet or assign the lease without the written consent of the lessor. It also appears that some time in February, 1910, the Western Casket and Undertaking Company was organized, and that the same Sattler, who was the president of the defendant Casket Company, became and afterwards was the president of the Undertaking Company; that Thompson, the lessor, at the time he entered into this lease and prior thereto, conducted an undertaking establishment upon the demised premises; that some time after the execution and delivery of the lease he became an employee of the Undertaking Company, and acted as its manager in conducting a similar business on the demised premises; that he received from the Undertaking Company as compensation for his services a salary of $150 per month; that he made daily and weekly reports of the business managed by him to the main office of the Undertaking Company.

It also appears that defendant Casket Company never went into possession of the premises, and that, from the beginning of the term of the lease up to the time of Thompson's death, the Undertaking Company was at all times in the exclusive possession of the demised premises; that the rent therefor, in the sum of $50 per month, was paid to Thompson by the checks of the Undertaking Company up to the time of his death; that he personally indorsed and cashed the checks therefor; that Thompson died December 13, 1912, and that for several months thereafter the Undertaking Company continued to pay the same rent for the premises; but on April 19, 1913, the Undertaking Company, by Sattler, wrote a letter to one of Thompson's heirs plaintiff, inclosing a check for the current month's rent and stating:

"As yet there is no indication of our being able to rent your store, on account of the peculiar conditions existing, therefore, it seems impossible to find a tenant, and it would seem an injustice to us that we should

be expected to pay rent for this place. We find that it was understood that we would only be expected to lease these premises so long as your father, John Thompson, continued to be manager of that branch of our business, and from this standpoint we feel that his death annulled the lease. After careful consideration of the proposition in all its phases, we feel that we should be released of this obligation. In fact, we have decided that we can pay this rent no longer. We, therefore, wish to notify you that we do not wish to be held responsible for the rent of the store, and as it appears to us now, we will decline to pay any further rent. * * * "

In its petition for a rehearing appellee insists there are other facts overlooked by this court in its former opinion, tending to show a new lease from Thompson to the Undertaking Company. It says the widow, Anne O. Thompson, testified to that effect, that the letter from Sattler above quoted indicates it, and that it may be inferred from the fact that for more than 3 years this rent was not demanded from the Casket Company. The testimony of Mrs. Thompson referred to was in response to a question by the court as to "Who occupied the premises?" She replied, "My husband; he took care of it; he worked for the Western; they rented the store, you know." This answer comes short of establishing the fact for which appellee contends, and is just as consistent with the theory that the Casket Company rented the store as that the Undertaking Company rented it.

The statement referred to in Sattler's letter is a self-serving one, clearly not binding on the plaintiffs in this case, and the assertion of appellee that the evidence shows no demand was made for the rent is not sustained by any reference to the abstract or the record.

We think it must be conceded that the lease made a prima facie case for the plaintiffs and that the burden was on the defendant to show the truth of the only matter relied on by way of defense, which was that

for a mutual consideration the lessor Thompson agreed to and did cancel the written lease, and let and rent the premises to the Western Casket and Undertaking Company. There is no evidence that the lease was canceled by any express agreement either oral or written. The lease was in the possession of plaintiffs and was put in evidence by them at the trial. It is apparently in the same physical condition as at the time it was executed and delivered. It is significant that it was neither delivered up nor physically changed at any time.

In this State a written lease, although under seal, may be surrendered by verbal agreement of the parties to it. *Baker v. Pratt,* 15 Ill. 568. It is also true that an agreement of this nature may be inferred from the conduct of the parties to the lease. *Fry v. Patridge,* 73 Ill. 51; *Williams v. Vanderbilt,* 145 Ill. 246; *Dills v. Stobie,* 81 Ill. 202. But this rule is based upon the principles of estoppel and the conduct proved must be such as is inconsistent with the continuance of the relation of landlord and tenant. *Grommes v. St. Paul Trust Co.,* 147 Ill. 634; *Johnson v. Northern Trust Co.,* 265 Ill. 270; *Beall v. White,* 94 U. S. 382; *Rees v. Lowy,* 57 Minn. 381.

The affidavit of merits alleges that the agreement which it is claimed amounted to a surrender of the lease and the estate conveyed by it was made February 1, 1911, but the defendant says this was a clerical error and argues that all the evidence indicates that the transaction took place in February, 1910, shortly after the lease was executed and delivered. The testimony for the defendant is positive that it never went into possession of the premises. If this be true, it could not make a technical surrender of the estate conveyed, because the defendant could not yield up to the lessor an estate, which, as lessee, it did not yet possess. If the defendant had actually taken possession under the lease, a change of the possession would have been a

material fact tending to show a change in the relationship of the parties. Aside from all technical considerations, we do not think this record contains evidence from which any agreement to surrender the lease or the estate or any intention that the relation of landlord and tenant between the lessor and the lessee should cease to exist can be inferred. We think the proof fails to establish estoppel of the lessor or his heirs.

The only facts tending to show such agreement, express or implied, or such estoppel are that all the parties knew the Casket Company did not go into possession; all the parties knew that the Undertaking Company did go into possession and that the rent when paid was paid by the Undertaking Company. These facts are just as consistent with the theory that the Undertaking Company was an assignee of the original lease, or that it was a sublessee thereunder, as it is with the theory that a new lease was entered into and the old one surrendered by agreement of the parties interested.

But it is said that a provision in the lease to the effect that the lessee might not assign or sublet without the consent of the lessor is inconsistent with this view. We do not think so. Those provisions were for the benefit of the lessor exclusively. *Sexton v. Chicago Storage Co.*, 129 Ill. 318; *Smith v. Goodman*, 149 Ill. 75. The defendant relies upon a statement of the law in Taylor on Landlord and Tenant, vol. 2, sec. 515, as follows:

"An actual and continued change of possession *by the mutual consent of the parties* will, as we have said, amount to a surrender by operation of law, and that, whether the possession is delivered to the landlord himself or to another in his behalf. It may also be implied from circumstances and the acts of the parties."

We do not think that statement of the law applicable to this case because there is here no change of possession. In the note to the same section, however, it is stated:

" 'The rule of law as now settled by the recently adjudicated cases is, that any acts which are equivalent to an agreement on the part of the tenant to abandon, and on the part of the landlord to resume possession of the demised premises, amount to a surrender by operation of law.' Citing *Talbot v. Whipple,* 14 Allen (Mass.) 177. But whether a surrender is effected by a change of possession, the consent of all parties to the change of tenancy seems to be necessary."

But there is not a scintilla of evidence showing what the agreement between the three parties was, nor indeed that the three made any agreement. The parties may have agreed; they may not; either theory is consistent with the evidence. It fails to establish that "it was mutually agreed."

The defendant was in privity with the lessor in two ways, first, by privity of estate, and secondly, by privity of contract. The assignment of the lease and the transfer of possession to a third party would destroy privity of estate, but it would not destroy privity of contract, and the defendant would still be liable on its written covenant to pay rent. *Barnes v. Northern Trust Co.,* 169 Ill. 112. In that case the court said:

"Appellant complains of two instructions given for the plaintiff. These instructions announced in general terms the doctrine that although a landlord may have given his consent to an assignment by a lessee and accepted the assignee as his tenant and received rent from him, yet the lessee is not released from his express covenant to pay rent, unless the landlord has accepted the surrender of the lessee and released him. Such is the law as laid down by this court and by other authorities. (*Grommes v. St. Paul Trust Co.,* 147 Ill. 634; 12 American and English Encyclopedia of Law, p. 1032).

"It is contended by the appellant that because Henry Shuttler and the appellee received rent from the American Book Company after A. S. Barnes & Company turned their business and the premises over to

the American Book Company, they thereby released A. S. Barnes & Company from their obligation to pay any more rent. But unless there was a substitution of the American Book Company in place of A. S. Barnes & Company, the original lessees, and unless there was a clear intention to make a new contract with the American Book Company and to discharge A. S. Barnes & Company from further liability under the lease, and unless there was an intent to accept a surrender of the lease from A. S. Barnes & Company, A. S. Barnes & Company were not relieved from their liability under the lease.''

Appellee refers us to *Beidler v. Fish,* 14 Ill. App. 29, and *Duncan v. Moloney,* 115 Ill. App. 522. We find nothing in these cases inconsistent with the views we have expressed.

The plaintiffs asked the court to hold as a proposition of law:

''That by the Western Casket and Undertaking Company taking possession of the premises in question, and the payment of rent by the said Western Casket and Undertaking Company to the lessor, the plaintiffs, in the absence of proof of any agreement as to the cancellation or surrender by the lessee of the lease in question, are held not to have waived any of their rights under said lease.''

The court refused to so hold and in this, we think, erred. The plaintiffs were entitled to a finding and judgment in their favor for the amount of the unpaid rent, together with interest, and the judgment of the trial court will, therefore, be reversed with a finding of fact and judgment entered here.

*Reversed with finding of facts and judgment entered here.*

BARNES and GRIDLEY, JJ., concur.

Finding of facts. We find that there never was any agreement, express or implied, between appellee, Western Casket Company, and appellants or John Thompson, deceased, whereby appellee was in any way re-

leased from its obligation to pay rent according to the covenant of the lease sued on. That appellee, Western Casket Company, is liable for the rent due and unpaid, under the terms of said written lease, with interest thereon at five per cent per annum, from the termination of the lease, January 31, 1915, and we find that said amount due and unpaid is $1,318,33.