## H. H. BLACK ET AL. v. CALLOWAY & RAIN.

The act of 24th December, 1851, reads as follows: "The holder of any protested draft or bill of exchange, drawn within the limits of this state, upon any person or persons living beyond the limits of this state, shall, after having fixed the liability of the drawer or indorser of any such draft or bill of exchange, as provided for in the act of March 20, 1848, be entitled to recover and receive ten per cent. on the amount of such draft or bill, as damages, together with interest and costs of suit thereon accruing: *Provided,* That the provisions of this act shall not be so construed as to embrace drafts drawn by persons other than merchants upon their agents or factors." (Paschal's Dig., Art. 236, Note 296.) It is only by this act that the party can recover damages upon a dishonored bill; and he who claims this penalty must bring his case fairly within the provisions of the act by appropriate averments.

If the petition state that the drawer was a merchant, and the drawees their factors or agents, this averment alone would entitle them to damages on a bill-protested for non-acceptance.

Where the pleadings did not aver the facts which entitled the party to damages, it was error to charge the jury that they might give damages.

Where there was no averment that either the drawer, the payee, or the drawees were merchants, doubts were expressed whether the appearance of mercantile paper could be substituted for proofs, as intimated in Pyron & Mitchell v. Butler, 27 Tex., 271.

The 6th section of the act of 29th March, 1848, (which was substituted by the act of 11th January, 1862,) was in force when the draft was drawn, and it read as follows: "Three days of grace shall be allowed on all bills of exchange and promissory notes assignable and negotiable by law: *Provided,* That the 4th, 5th, and 6th sections of this act shall extend only to contracts between merchant and merchant, their factors and agents." (Paschal's Dig., Note 295; O. & W. Dig., Art. 99.) Until the drawee accepts the bill, the contract is between the drawer and payee, and doubts were expressed if they are not the parties who must be the "merchant and merchant."

APPEAL from Harrison.   The case was tried before Hon.
CHARLES A. FRAZER, one of the district judges.

H. H. Black, a beef-packer, of Jefferson, Texas, drew a
draft on Fellows & Co., of New Orleans, dated 31st January,
1860, and due at three days' sight, in favor of A. G. Scogin,
which draft Scogin indorsed to Calloway & Rain, who sent
the draft to McKelroy & Bradford, of New Orleans, their
agents and commission merchants, with the request to pre-
sent the same to Fellows & Co.   They presented the draft
to Fellows & Co., who refused to accept it.   McKelroy &
Bradford, for Calloway & Rain, then had the draft pro-
tested for non-acceptance.   Calloway & Rain, at the second
term of the court after said draft was presented, brought
this suit against Black, as drawer, and Scogin, as indorser,
and averred that the draft was presented and payment
demanded, and the draft protested for "non-payment."
There was no averment that it was presented for accept-
ance, though in the amended petition it is said that, accept-
ance being refused, the draft was protested, of which defend-
ants had notice.   Scogin defended, on the ground that, by
reason of the failure of the plaintiffs to use the proper dili-
gence to fix his liability as indorser, he is discharged.

The plaintiffs, in their original petition, proceeded as if
they expected to fix the liability of the indorser, Scogin,
by bringing suit at the second term, as they attempted to
show cause why suit was not brought at the first term of
the court after the cause of action accrued.   But, should
they fail in that, they, in their amended petition, allege
that the transaction was between merchant and merchant,
in order to fix the liability of the indorser according to the
law merchant.

The plaintiffs alleged that they purchased the draft from
Scogin on the 3d day of February, 1860, and sent it imme-
diately to their agents, McKelroy & Bradford, in New
Orleans; that on the 14th of the same month it was pre-
sented and protested for "non-payment."   The record of

the district court shows that the first term of the court convened on the 19th day of March, the last return day being the Tuesday preceding. A whole month intervened between the date of the presentation and the last return day.

The witness Peete stated that letters would sometimes reach Marshall from New Orleans in five days, and sometimes in six weeks; that the mails were irregular. He also testified that the plaintiffs' agents, McKelroy & Bradford, retained the draft in their hands, after presentation, for two months before it was mailed. There was proof tending to show that the drawer of the draft was a beef merchant, engaged in a packery, for which he purchased beef and shipped it, and drew on his commission merchant in anticipation of the proceeds. There was no proof that the payee was a merchant, nor was it averred that either the drawee or payee were merchants. It was plead in the answer that they were not.

*G. & H. McKay,* for Scogin.—I. This court has never yet decided under the statute as to what is showing good cause why suit was not brought at the first term. (Bailey v. Heald, 14 Tex., 226.) The cause given by plaintiffs is certainly not a good one; for, if they did not know that the draft had been dishonored, their agents, McKelroy & Bradford, knew it, and Scogin is not to blame for the want of diligence on the part of themselves or their agents and commission merchants.

II. If the plaintiffs relied on the law merchant to fix the liability of Scogin, their case is equally hopeless. The draft was presented for acceptance on the 14th day of February, 1860. If the drawer and endorser had notice of the protest, from whom did they receive it? The notary's certificate of protest does not show that he gave them notice, as the statute requires. (O. & W. Dig., Arts. 97, 98.)

[As the case turned on the character of the parties, this part of the argument is omitted.]

III. The witness says that McKelroy & Bradford held the draft, thinking the drawees might receive funds of the drawer. That does not relieve them from giving the notice required by the law merchant. (Story on Bills, § 272; Chitty on Bills, ch. 8, § 1, pp. 344, 360, 361; Bayley on Bills, ch. 7, § 2, p. 253, 5th ed.)

IV. But admitting, for the sake of argument, that the demand, refusal, protest, and notice, are all regular and according to law, yet have they shown that they are in a condition to avail themselves of the remedy under the law merchant? If the liability is not fixed by suit, it must be done according to the law merchant. (Reid v. Reid, 11 Tex., 585; Payne v. Patrick, 21 Tex., 680.) It must be shown that the transaction was between merchant and merchant. (Locke v. Huling, 24 Tex., 311.)

*A. H. Willie,* for defendant in error, suggested delay.

COKE, J.—This suit was brought on a protested draft for $350, drawn at Jefferson, on the 31st January, 1860, by H. H. Black, payable to the order of A. G. Scogin, on Messrs. Fellows & Co., of New Orleans, and indorsed by Scogin to McKelroy & Bradford. The protest of the draft for non-acceptance is averred in the petition. It is also averred, this suit being brought to the second term of the court after the dishonor of the draft, that it was not instituted before the first term, because the plaintiffs did not hear of the protest until too late to sue to the first term. The plaintiffs, Calloway & Rain, are alleged to be merchants. McKelroy & Bradford, to whom the draft was indorsed, simply for convenience of collecting the draft, as is alleged, they being the agents of plaintiffs in New Orleans, are also alleged to be merchants. There is no allegation that Black, the drawer, is a merchant, nor that Scogin, the payee and indorser, is a merchant; nor is it alleged that Fellows & Co., the drawees, are merchants, or

that they were the agents or factors of Black, the drawer. There were a verdict and judgment for the plaintiffs below for $350 principal, $31 10 interest, $35 damages, and $3 06 notary fees, making in all the sum of $419 16. This writ of error is sued out by Scogin, the indorser.

The charge of the court is assigned as error, and we are of opinion that the assignment is well taken, at least to so much of it as authorized the finding of ten per cent. damages. The act of 24th December, 1851, on this subject, (Paschal's Dig., Art. 236) provides that the holder of any protested bill of exchange or draft, drawn within the limits of this state, upon any person living beyond the limits of this state, shall, after having fixed the liability of the drawer or indorser of such draft or bill in the manner provided by law, be entitled to recover ten per cent. on the amount of such draft or bill as damages, together with interest and costs of suit, provided that this act shall not be so construed as to embrace drafts drawn by persons other than merchants upon their agents or factors. It is by virtue of the provisions of this act, if at all, that the plaintiffs below were entitled to recover ten per cent. damages. A party who would claim the benefit of this act, which is somewhat penal in its operation, should at least be held to bring his case fairly within its provisions by appropriate averments. The well established rules of pleading require that the facts on which a party bases his claim to the relief he seeks shall be averred with reasonable certainty and distinctness, as well to apprize the opposite party of the nature of the action he has to meet, as to lay a predicate for his proof. If these salutary requirements could in any instance be departed from with propriety, the departure should certainly not be made in favor of one who is seeking himself the enforcement of a rigorous rule of law upon his adversary. The plaintiffs have failed to allege in their pleadings the facts which would entitle them to recover ten per cent. damages against the defendants. It is true that they pray

judgment for damages, but they do not bring their case within the proviso of the statute, by alleging that Black, the drawer, is a merchant, and that Fellows & Co., the drawees, are his factors or agents, the allegation and proof of which would alone entitle them to such a recovery. There being no basis in the pleadings for a verdict and judgment against the defendants below for damages, it follows that the charge of the court, which authorized such a finding by the jury, is erroneous, and for this error the judgment must be reversed.   The omission is fundamental, and is, under repeated adjudications of this court, clearly not cured by the verdict.   (Locke v. Huling, 24 Tex., 312; Elliott v. Wiggins, 16 Tex., 596; McLellan v. The State, 22 Tex.; De Witt v. Miller, 9 Tex., 239.)

The correctness of all that portion of the charge of the court predicated upon the hypothesis that the draft sued on is mercantile papers is exceedingly questionable, even if it were admitted to be law in the abstract, (about which we express no opinion,) for the reason that the draft sued on is not alleged to be mercantile paper: neither the drawer, Black, the payee, Scogin, nor the drawees, Fellows & Co., having been alleged in the pleadings to be merchants; nor can we say that the draft has the appearance of mercantile paper, if its appearance could, as has been intimated in this court, be substituted and held good for the direct averment, in the absence of special exceptions.  (Pyron & Mitchell v. Butler, Austin T., 1864,) [27 Tex., 271.]   The draft is drawn by H. H. Black on Fellows & Co., in favor of Scogin.   We might say, from the appearance of the draft, that the drawees, Fellows & Co., are merchants, but there is nothing to indicate that Black and Scogin, between whom the contract originated, are merchants.   Fellows & Co., the drawees, never became parties to the contract embodied in this draft, because they refused to accept.  The 6th section of the act of March 29, 1848, which was in force when this draft was given, restricts the fixing of the

liability of drawers and indorsers of bills of exchange and promissory notes by protest for non-acceptance or non-payment, and giving notice of such protest, "to contracts between merchant and merchant, their factors and agents."

No drawee ever becomes a party to such a contract until he accepts; until then, the contract exists between the drawer and payee exclusively, and it may well admit of serious doubt if the two latter are not the parties to the bill required by the statute to be merchant and merchant, in order to give a mercantile character to the paper. We do not intend to be understood as deciding this point, its decision not being necessary to a disposal of the case.

The judgment is reversed, and cause remanded for further proceedings.

REVERSED AND REMANDED.

[WILLIE, J, having been of counsel, did not sit in this case.]