PIERCE FORDYCE OIL ASS'N v. WOODS et al. (No. 8263.)

(Court of Civil Appeals of Texas. Ft. Worth. Oct. 16, 1915. Rehearing Denied Dec. 4, 1915.)

1. APPEAL AND ERROR ☞272, 501—EXCEPTION—NECESSITY—SHOWING IN RECORD.

The overruling of exceptions is not subject to review unless it is excepted to at the proper time, and where the transcript fails to disclose any order overruling such exceptions the appellate court will only consider the question of fundamental error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1611–1619, 2300–2305; Dec. Dig. ☞272, 501.]

2. APPEAL AND ERROR ☞193—OBJECTIONS—SUFFICIENCY OF PLEADING.

An objection that plaintiffs' petition does not state facts sufficient to constitute a cause of action may be urged for the first time on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1226–1238, 1240; Dec. Dig. ☞193.]

3. NOVATION ☞1—WHAT CONSTITUTES.

"Novation" is the substitution by mutual agreement of one debtor or one creditor for another, whereby the old debt is extinguished, or the substitution of a new debt or obligation for an existing one, which is thereby extinguished; it is the extinguishment of one obligation by another, the substitution of a new obligation in lieu of that old obligation, the effect of which is to pay or otherwise discharge it.

[Ed. Note.—For other cases, see Novation, Cent. Dig. § 1; Dec. Dig. ☞1.

For other definitions, see Words and Phrases, First and Second Series, Novation.]

4. NOVATION ☞7—REQUISITES—ASSENT OF PARTIES.

To constitute a novation by the substitution of a new obligation between the same parties there must be the consent of both parties, and the obligor's intention that the existing debt shall be discharged by his new obligation does not suffice; and to constitute a novation by substitution of creditors or debtors there must be a mutual agreement among three or more parties whereby a debtor, in consideration of being discharged of liability to his original creditor, contracts a new obligation in favor of a new creditor.

[Ed. Note.—For other cases, see Novation, Cent. Dig. § 7; Dec. Dig. ☞7.]

5. NOVATION ☞3—REQUISITES—RELEASE OF EXISTING OBLIGATION.

If an agreement does not and is not intended to operate as a release of an original debt, it is not a novation.

[Ed. Note.—For other cases, see Novation, Cent. Dig. § 3; Dec. Dig. ☞3.]

6. NOVATION ☞11—SUBSTITUTION OF CONTRACT—PRESUMPTION.

A petition in an action to recover on oil-drilling contracts, averring that after entering into an oral contract with defendant plaintiff entered into a written contract with others, induced by the representations of defendants that such written contract would not alter or destroy an obligation entered into by the defendants in the verbal contract, and that the plaintiff entered into and executed the written contract with the express understanding with defendants that such action would not affect defendant's liability, excluded the presumption of novation and any intention of the parties that the written contract should be a substitution for the verbal contract.

[Ed. Note.—For other cases, see Novation, Cent. Dig. § 11; Dec. Dig. ☞11.]

7. CONTRACTS ☞245 — ORAL CONTRACTS — MERGER IN WRITTEN CONTRACT.

In a suit to recover on two oil-drilling contracts, one verbal and the other written, embodying the same terms, but different parties, a petition pleading an agreement on the part of defendant that the written contract was to be taken only as further security for the defendants, and not as superseding the verbal contract did not show the intention of the original parties to the verbal contract that it be merged into the written contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1129, 1130; Dec. Dig. ☞245.]

8. CONTRACTS ☞245 — ORAL CONTRACT — EFFECT OF ADDITIONAL WRITTEN CONTRACT.

One having a verbal contract should not be penalized by being deprived of his original security by the acceptance of additional contract in writing to secure it containing the obligation of other parties, especially where such security is accepted at the instance and for the protection of the original obligors.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1129, 1130; Dec. Dig. ☞245.]

9. APPEAL AND ERROR ☞1050 — HARMLESS ERROR—ADMISSION OF EVIDENCE.

In an action to recover on two oil-drilling contracts, error, if any, in the admission of a conclusion of a witness was harmless, where the witness in other parts of his deposition testified without objection to facts sustaining the conclusion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. ☞1050.]

Appeal from District Court, Wise County; Edgar Scurry, Judge.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Suit by G. C. Woods and another against the Pierce Fordyce Oil Association and others. Judgment for plaintiffs, and defendant Pierce Fordyce Oil Association appeals. Affirmed.

Huff, Martin & Bullington, of Wichita Falls, for appellant. Fitzgerald & Cox, of Wichita Falls, for appellees.

BUCK, J. This suit was filed by appellees, G. C. Woods and Bert Brodie, doing a drilling business in the name of the Bert Brodie Drilling Company, to recover on two contracts, one a verbal contract and the other a written contract embodying the same terms, subject-matter, and conditions, except that the first, the verbal contract, was alleged to have been made by and between appellees of the first part and appellant and one J. E. Head of the second part, while the written contract was alleged to have been made by and between appellees of the first part and the Dundee Dome Oil Company of the second part, which latter obligation was guaranteed by J. B. Harris and J. G. Tiller. The verbal contract was entered into on the ——— day of March, 1914, and by the terms thereof, the plaintiffs covenanted and agreed to drill an oil well on the J. E. Head lease out of the Alexander-Albright farm in Archer county, Tex., to a depth of 2,500 feet. The defendants were to furnish a complete standard rig, all casing, fuel, water, and tank to contain the same, at the well, and plaintiffs were to furnish a boiler, engine, belts, drilling tools, water pipes, and connections, etc., including labor, at their own expense. Plaintiffs were to receive for the drilling of said well $3.50 per each foot drilled to a depth of 2,100 feet, and $5 per foot for each foot drilled thereafter up to 2,500 feet. They were to receive 60 per cent. of the price due when a depth of 1,200 feet was reached, and 60 per cent. when a depth of 2,100 feet was reached. Plaintiffs alleged that, pursuant to the terms of said contract, they began operations and spent large sums of money for labor and material, and made all necessary preparations for carrying out the terms of said contract, and began actual drilling of said well and continued the same until they had reached a depth of some 500 to 700 feet; that at this stage of the work the defendants J. E. Head and the Pierce Fordyce Oil Association requested them to sign a written contract, which written contract was alleged to have been attached to the petition and made a part thereof. It does not appear to have been so attached, and no evidence as to its contents was introduced in evidence, except as will be hereinafter stated. Plaintiffs alleged that the defendants aforesaid requested plaintiffs to sign the written contract with plaintiffs as parties of the first part and the Dundee Dome Oil Company, J. B. Harris, and J. G. Tiller as parties of the second part; defend-

ants stating to plaintiffs at the time that the company aforesaid and said Harris and Tiller were interested in the development of said oil lease, in the drilling of said well, and that the purpose of having plaintiffs enter into this written contract was to make said company and parties mentioned jointly liable with the other defendants for the drilling of said well, and plaintiffs were assured by the said defendants Head and Pierce Fordyce Oil Association that the signing of said written contract by the plaintiff was not intended to and did not in any way affect the liability of said Head and Pierce Fordyce Oil Association, nor in any way supersede or set aside the oral contract theretofore made, and that with such understanding plaintiffs signed and executed said written contract. Plaintiffs further alleged that the defendants had breached their verbal and written contracts, and had failed to furnish fuel and water and tanks, etc., necessary to the further prosecution of said work, and, upon plaintiffs having reached a depth of 1,200 feet, failed and refused to pay plaintiffs the 60 per cent. of the price for said work so agreed upon, and that they (the plaintiffs) were willing, anxious, able, and ready to continue the drilling of said well until completed, as they had agreed to do both in the verbal contract with the two defendants above mentioned and the written contract with the other defendants mentioned, but they had been prevented by the failure and refusal of the defendants to comply with their said contracts. They alleged that they would have made a profit of $3,000 on the 1,300 feet that they were prevented from drilling by defendant's breach; that they were entitled to the sum of $5,250 for the 1,200 feet drilled, for which they prayed judgment.

Defendant Pierce Fordyce Oil Association, which alone appeals, after general and special demurrers, pleaded a merger of the verbal contract into the written contract alleged, and that it was fully released and the plaintiffs relinquished any claim on it by the execution of the written contract. It denied that it had ever requested plaintiffs to sign the written contract, or had given any assurances to them that the signing of said contract was not intended to affect said defendant's liability, and denied any liability at all for any alleged breach, or for the default or miscarriage of other contracting parties. It further pleaded that subsequent to the filing of the original petition in this suit an original writ of attachment had been issued at the instance of plaintiff against the property of the Dundee Dome Oil Company; that the same had been sold by the sheriff of Archer county for the sum of $3,000 and purchased by plaintiffs at said sale; and that said sum was amply sufficient to satisfy all losses to which plaintiffs had been subjected by reason of said alleged breach.

In a supplemental petition plaintiffs admit-

ted the sale of the property of the Dundee Dome Oil Company under a writ of attachment, and admitted that they had received about the sum of $2,200 therefrom after the costs had been paid. They further alleged that J. E. Head and one L. S. Kemphner, who are alleged to have entered into the original contract with plaintiffs, did not disclose their agency, nor their principal, the Pierce Fordyce Oil Association, but that in fact they were the agents of said Pierce Fordyce Oil Association, and that all their rights, contracts, and agreements relative to said leases, and the development of the same, in their contract for the drilling of the well mentioned, was done for and on behalf of the said Pierce Fordyce Oil Association, and as the agents of said association, and the said contract was in truth and in fact the contract and agreement of said Pierce Fordyce Oil Association, and it became bound to plaintiffs thereunder. In the alternative, they alleged a partnership existing between said Head and Kemphner and the Pierce Fordyce Oil Association with reference to said leases, and the development thereof, and the drilling of said well, and that thereby said association became bound as a partner.

In their first supplemental answer defendant association denied the allegations contained in plaintiffs' first supplemental petition, wherein they charged the agency of said Kemphner and said Head and the partnership existing between said two named partners' and the appellant.

[1, 2] In its first assignment appellant urges error in the overruling of its general exception, and in its second assignment to the overruling of a special exception. The transcript fails to disclose any order of the court overruling said exceptions. Therefore we will only consider the question of whether or not fundamental error is shown, for the action of the trial court in overruling exceptions is not subject to revision, unless such action was excepted to at the proper time. But an objection that plaintiffs' petition does not state facts sufficient to constitute a cause of action may be urged for the first time on appeal. W. U. Tel. Co. v. Hidalgo, 99 S. W. 426, affirmed in 102 Tex. 596, no opinion. Such error is fundamental. Black v. Calloway, 30 Tex. 232; Stanbury v. Nichols, 30 Tex. 145.

The question, then, presented to us in the consideration of these two assignments, is: Does the petition show a cause of action against this appellant? Or, in other words, can plaintiffs recover upon an alleged verbal contract between them and appellant, when the petition discloses that subsequently plaintiffs entered into a written contract touching the same subject-matter and containing the same terms as to payment, etc., but to which other named defendants were made parties? Was the verbal contract merged into the written one as a matter of law; or, otherwise stated, was there a novation as to par-

ties to be charged by reason of this written contract?

[3-5] "Novation is the substitution by mutual agreement of one debtor or one creditor for another, whereby the old debt is extinguished, or the substitution of a new debt or obligation for an existing one, which is thereby extinguished. It is the mode of extinguishing one obligation by another—the substitution, not of a new paper or note, but of a new obligation in lieu of an old one—the effect of which is to pay, dissolve, or otherwise discharge it." 29 Cyc. 1130, and authorities there cited. To constitute a novation by a substitution of a new obligation between the same parties, there must be the consent of both contracting parties. The intention of the obligor that the existing debt should be discharged by the new obligation he enters into does not suffice. The creditor must concur in this. To constitute a novation by substitution of creditors or debtors, there must be a mutual agreement among three or more parties, whereby a debtor, in consideration of being discharged from his liability to his original creditor contracts a new obligation in favor of a new creditor. Scott v. Atchison, 38 Tex. 385; Gimbell v. King, 43 Tex. Civ. App. 188, 95 S. W. 7. There can be no novation to which the original debtor does not assent, and to which he is not a party. Dean v. Ellis, 108 Mich. 240, 65 N. W. 971. If the agreement does not, or was not intended to, operate as a release of the original debt, it is not a novation. 29 Cyc. 1134.

[6] In plaintiffs' petition they specifically averred that they entered into the written contract, and were induced to do so upon the representations of defendants J. E. Head and the appellant that such written contract would in no wise alter, destroy, or decrease the obligation alleged to have been entered into by the two last-named parties in the verbal contract, and that plaintiffs entered into and executed the written contract with the express understanding between them and the defendants Head and appellant that such action would in no wise affect the liability of said Head and appellant. Therefore we are of the opinion that the petition on its face sufficiently alleged facts which would exclude the presumption of novation, and exclude the presumption that it was the intention of the plaintiffs and the other parties to the original verbal contract that the written contract should be a substitution for the verbal one.

[7] It will be noted that the only evidence in the statement of facts as to what the written contract contained is as follows:

"The defendant introduced the following documentary evidence: * * * (6) A contract between the Dundee Dome Oil Company and the Bert Brodie Drilling Company, by G. C. Woods, for the drilling of a well on the Alex. Albright farm in Archer county, said well to be 2,500 feet deep, if oil or gas in paying quantities is not found at less depth, and the consideration to be paid is $3.50 per foot down to 2,100 feet

and $5 per foot from 2,100 to 2,500 feet, *and other stipulations as pleaded by plaintiffs in their pleadings.*" (Italics ours.)

Plaintiffs pleaded the agreement on the part of Head and appellant that said written obligation was to be taken and understood only as further security for the benefit of the two above-named defendants, and not as in any way superseding the verbal contract. Perhaps, under this state of the record, we would be justified in concluding that the written contract contained such stipulations. But in reaching our conclusion we are not dependent on this strict, though perhaps warranted, construction of this admission by appellant contained in the statement of facts above mentioned.

We do not think the petition on its face shows the intention by the original parties to the verbal contract that such verbal contract should be merged into the written contract, nor do we think that such result follows as a matter of law. While it is true, as has been clearly stated by Mr. Greenleaf (volume 1, p. 275):

"Where the parties have deliberately put their engagements into writing in such terms as import a legal obligation, without any uncertainty as to the objection or extent of such engagement, it is conclusively presumed that the whole engagement of the parties and the extent and manner of their undertaking was reduced to writing, and all oral testimony of a previous colloquium between the parties, or of conversations or declarations at the time when it was completed, or afterwards, is rejected, as it would tend, in many instances, to constitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties"

—yet we do not think, to sustain plaintiffs' cause of action as pleaded, it would be necessary to violate the well-established rule of evidence enumerated above; for, in the first place, the parties obligor are not the same in the verbal contract and in the written contract, and, except as to the count wherein plaintiffs seek to hold appellant liable as a partner, there is no allegation of appellant's liability except as to the verbal contract.

[8] We see no reason why one having a verbal contract with one or more parties should be penalized, by being deprived of his original security, for the acceptance of additional security in writing, and with other parties obligor, especially when such security was accepted at the instance and for the protection of the original parties obligor. We believe plaintiffs' petition in effect pleads a cause of action against the appellant and J. E. Head on the verbal contract and against the other defendants on the written contract accepted as additional security to the plaintiffs, and also as security on behalf of the original obligors, and as such we believe the petition is good as against the exceptions urged.

In other assignments error is urged to the action of the court in admitting over objection testimony of one of the plaintiffs as to verbal conversations, contracts, and agreements between said plaintiff and J. E. Head and L. S. Kemphner, with reference to the drilling of the well; same being objected to on the ground that it was an effort on the part of the plaintiff to prove by oral testimony a contract different in its terms from the written contract declared upon in this case. But for the reason heretofore given we do not find any error in the action of the court, and the assignments are overruled.

[9] In the fifth assignment error is urged to the admission of interrogatory No. 30, propounded to J. E. Head, and the answer thereto; the objection being that the same involved a conclusion and opinion of the witness and invaded the province of the jury and was hearsay. The interrogatory was as follows:

"Please state whether or not the Pierce Fordyce Oil Association, at the time you entered into a contract herein for the drilling of a well in Archer county, was interested in said lease upon which said well was to be drilled. If you state that it was interested, then state fully and completely and in detail just how it was interested and whereby it became interested."

To which the witness answered:

"I know that the Pierce Fordyce Oil Association was interested. I know from the statements of Kemphner and statements of Cahoon, and because of the facts hereinbefore stated, and because of the payment by the Pierce Fordyce Oil Association of drafts drawn for their portion of the expense of acquiring the property, and because of the various facts herein before stated."

While it is true that a witness may not be permitted to testify as to his conclusion or opinion as to the probative effect of facts, but rather should be limited in his testimony to the facts upon which he bases such opinion, and leave it to the jury to draw conclusions therefrom, yet any error in the court's ruling in this instance is rendered harmless by the fact that in other portions of his deposition the witness Head testified, and without objection, to facts and circumstances which, if true, showed conclusively that the Pierce Fordyce Oil Association was interested in the leases covering the land upon which the well in question was drilled. He testified that L. S. Kemphner held the assignments of leases for the Pierce Fordyce Oil Association; that Mr. Cahoon, the vice president and general manager of said association, and admitted by appellant so to be, with full authority to bind the corporation, told him (Head) that Mr. Kemphner was at Wichita Falls, Tex., and was their representative, but that for business reasons it was desirable that Mr. Kemphner's connection with the Pierce Fordyce Oil Association be not revealed; that the Pierce Fordyce Oil Association was dependent on a contract for its oil for its refinery, and at the time of this conversation the Pierce Fordyce Oil Association had no visible supply of crude oil in sight, independent of the source from which they were then getting it, and if they became aggressive as

producers it might in some manner prejudice their acquiring oil, and for that reason they were desirous of not being identified with Kemphner's transactions for the time being; that Mr. Cahoon discussed with him the Dundee Dome Oil Company's deal, and was present in Tulsa, Okl., when he and Mr. Kemphner and Head agreed on terms which led to the organization of the Dundee Dome Oil Company, which terms were subsequently reduced to written form in the Pierce Fordyce Oil Association's office at Tulsa, Okl.; that C. W. Cahoon, Kemphner, himself, and George Walker, the Pierce Fordyce Oil Association's stenographer, were present on the night of February 23, 1914, when the agreement was entered into whereby the said Head and the Pierce Fordyce Oil Association became jointly interested in said leases and the development of the Dundee Dome oil field. He further testified that Cahoon sent him to Kemphner as their agent and representative in said oil field, and further that the written contract entered into at Tulsa, Okl., on the 23d of February, 1914, embodied all the terms and conditions, except that it was carried in the name of L. S. Kemphner, instead of the Pierce Fordyce Oil Association, and that the Pierce Fordyce Oil Association was the principal in the transaction, instead of Kemphner. Other testimony, even by Mr. Cahoon, appellant's vice president, conclusively showed that appellant was interested in this lease at the time mentioned. Hence we believe that the error, if any, was harmless.

Believing that no prejudicial error has been shown, it is the judgment and order of this court that the judgment of the trial court be in all things affirmed.