[Civ. No. 2425. Third Appellate District.—February 18, 1922.]

## MAGGIE L. ROBERTS, Appellant, v. RICHARD MILLS, Respondent.

[1] LANDLORD AND TENANT — ERECTION OF BUILDING BY LESSEE — TRADE FIXTURE — INTENTION OF PARTIES—EVIDENCE.—The intention of the parties is an important factor in the determination of the character of a building erected by the lessee on leased premises; and the intention of the parties that a building erected on leased premises should constitute a trade fixture may be inferred from the nature of the building annexed, the situation of the parties making such annexation, the mode of annexation, and the purpose for which it was annexed.

[2] ID.—BUILDING AS TRADE FIXTURE—RIGHT OF REMOVAL.—While the term "trade fixture" is usually applied to tools, implements, and other contrivances more readily movable than a building, it also includes structures erected by the tenant on the demised premises for purposes of trade, and he may exercise his right of removal at his will at any time before the end of the term.

[3] ID.—ERECTION OF BUILDING BY LESSEE—PRESUMPTION.—The fact that the building was erected by the tenant for his own purposes raised the presumption in his favor of his right to remove it.

[4] ID. — REMOVAL OF BUILDING — ACTION FOR DAMAGES — RIGHT OF LESSEE.—In this action for damages for the removal of a certain building from the lands of plaintiff, the court was justified in

finding from the evidence that the building was a trade fixture; and it further appearing that the removal of the building could be effected without injury to the premises and that it had not become an integral part of the premises, the defendant had the right to remove it during the continuance of the term of his lease.

[5] ID.—WRITTEN LEASE—SUBSEQUENT EXECUTED ORAL AGREEMENT—RIGHT TO REMOVE BUILDING.—Where prior to the expiration of the original written lease it is superseded by an executed oral agreement creating a new tenancy at an advanced rent with a special agreement for the removal of the building erected by the tenant on the leased premises, the tenant has a right to remove such building at any time while the substituted lease is in force.

[6] ID.—SUBSTITUTION OF EXECUTED ORAL AGREEMENT FOR WRITTEN LEASE—EVIDENCE—ADMISSIONS OF AGENT.—The parties to a written lease may substitute therefor an executed oral agreement; and to establish the novation it is proper to receive in evidence the conversations between the lessee and the agent for the lessor with reference thereto and the admissions of such agent as to his agreement for the removal of buildings erected by the lessee on the leased premises.

[7] ID. — EVIDENCE OF AGENCY — SCOPE OF AUTHORITY — ESTOPPEL — FINDING.—Such person having represented himself as the agent of the owner of the property and having executed the instrument as her attorney in fact, and she never having repudiated nor questioned his right to do so, but having accepted the rent for many years without question and acquiesced in the possession and use of the premises during the entire period, the trial court was warranted in concluding that he was her agent and that he was acting within the scope of his authority.

APPEAL from a judgment of the Superior Court of Kings County. J. C. Needham, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

J. G. Crichton and W. D. Crichton for Appellant.

A. M. Drew for Respondent.

BURNETT, J.—The action was for damages for the removal of a certain building from the lands of plaintiff situ-

5. Effect of renewing tenancy without reserving right to remove fixtures, notes, 3 Ann. Cas. 331; 20 Ann. Cas. 769; 1 L. R. A. (N. S.) 1193; 17 L. R. A. (N. S.) 1135; 46 L. R. A. (N. S.) 947; 48 L. R. A. (N. S.) 294.

ated in the town of Coalinga, in the county of Fresno, and defendant had judgment for his costs, from which judgment the appeal has been taken.

Of the undisputed facts we may recite the following: On May 31, 1905, plaintiff and one M. S. Gibson were the equal owners of lots 17 and 18, block 29, of said town, said Gibson being in the sole possession and control of said lots, occupying a part of the same with a building, in which he was conducting a saloon, the rear end of the lots being vacant, the plaintiff residing elsewhere. On said date said Gibson made and executed a lease for the rear twenty-five feet of said lots to one I. Salhinger, for a term of five years, at a monthly rental of fifteen dollars, payable on the first day of each month. This lease was signed by Gibson in person and as an attorney in fact for M. L. Williams, who is now Maggie L. Roberts, the plaintiff herein. Said lease was properly acknowledged and thereafter recorded in the county recorder's office. The building in question was subsequently constructed on said rear portion of said lots. There was no removal clause in said lease. On the seventeenth day of October, 1905, said Salhinger by a written instrument duly executed and acknowledged, granted, sold, and conveyed to Richard Mills, the defendant herein, "and to his executors, administrators and assigns, that certain one-story frame building located on the fraction of the rear end of lots numbers 17 and 18, block number 29, town site of Coalinga. . . . Together with all the right, title and interest of the party of the first part in and to a certain five-year lease of said above-described fractional lots executed by M. S. Gibson and M. L. Williams on the 31st day of May, 1905." And the said Mills thereafter entered into the possession and use of said building.

As to the character of this structure, the court found that within the terms of said written lease "the said Salhinger erected and constructed a frame building upon said lots, placing the said building on said lots on mud sills on the surface of said ground and the same was built and constructed as a trade fixture to be removed upon the termination of said lease or any continuation thereof. That thereafter and during the term of said lease the said Salhinger sold, assigned and conveyed all his right, title and interest in and to said lease and sold and assigned and conveyed

the building situate on said leased premises to the defendant herein, Richard Mills, and the said Richard Mills continued in the possession thereof and as tenant of the said M. S. Gibson and the plaintiff herein until the removal of the building from the said premises.

"That during the running of the said lease made and executed by M. S. Gibson and the plaintiff to Salhinger, and subsequent to the purchase of the said lease and the said building by the said defendant, Richard Mills, the said M. S. Gibson, for and on behalf of himself personally and for and on behalf of the said Maggie L. Williams, entered into a verbal agreement with the said defendant, Richard Mills, wherein the said Richard Mills agreed to pay to the said M. S. Gibson personally and as agent, the one-half of all of the net proceeds received as rent for the use and occupation of said building, and the said M. S. Gibson personally and as agent for the said plaintiff agreed to accept said net rent in full payment of the rent for the ground on which the said building or any additional building erected by the said defendant, Richard Mills, stood. That it was also agreed between the said M. S. Gibson personally and as agent for Maggie L. Williams and the said Richard Mills, defendant herein, that the said Richard Mills should have the right to remove said building at any time he desired to do so and that the said M. S. Gibson personally and as agent should have the right to order the said building removed on reasonable notice at any time that he should desire to erect another building on said ground or to use for any other purpose the said portion of said lots 17 and 18 in said block 29 occupied by said building or buildings. That the said verbal agreement became an executed oral agreement of monthly tenancy for the said portion of said lots 17 and 18 occupied by the said buildings and was continued as a monthly tenancy from month to month until the removal of the buildings thereon by the said defendant, Richard Mills, and the said plaintiff accepted and received her portion of the said rent in full settlement for the use and occupation of the said portion of lots 17 and 18 of the buildings by the said defendant and the same became a settled and executed agreement of monthly tenancy by and on behalf of said plaintiff, with the right on the part of the defendant to remove the buildings at any time."

One point relates to the question whether the building became a "trade fixture" as found by the court, or became a part of the realty as provided in section 660 of the Civil Code. However, as to this, we think there can be no doubt that the evidence supports the finding. That this building was to be erected for purposes of trade appears in the written lease, and the evidence shows that it was so used by the tenants. **[1]** In this connection the intention of the parties is, of course, an important factor in the determination of the character of the building. The question of "intention is given pre-eminence by modern authorities. This intention is inferred from the nature of the thing annexed, the situation of the party making the annexation, the mode of annexation and the purpose for which it was annexed." (3 Words & Phrases, p. 2832, and cases cited.) **[2]** While the term is usually applied to tools, implements, and other contrivances more readily movable than a building, yet it also includes structures erected by the tenant on the demised premises for purposes of trade, and he may exercise his right of removal at his will at any time before the end of the term. (*Deane* v. *Hutchinson,* 40 N. J. Eq. 83 [2 Atl. 292]; *Carr* v. *Georgia Railroad,* 74 Ga. 73; *Evans* v. *McLucas,* 15 S. C. 67; *Earle* v. *Kelly,* 21 Cal. App. 480 [132 Pac. 262].)

The manner in which the building was erected would also indicate that it was not intended to become a part of the realty, but that it was understood that it might be moved off by the tenant. Defendant testified that the "wooden uprights were resting on little boards and around the bottom of the boards on the sides and ends of the building was a four by four scantling. . . . It was on top of the soil when it was built, but the soil was piled up on the outside afterward." J. M. McIntyre testified that it was "just a board and batten building; twelve-inch boards for the sides; no studding or anything; made of twelve-inch boards and four-inch batten on the outside; and it was built—well, like most of the houses over there at that time; with a board laid down; or a two-inch plank and then posts up and four by four on that and then the boards nailed to that." It may be added that the agreement made by Mr. Gibson and the defendant as to the removal of the building furnishes a contemporaneous construction of the undertaking as to the

character of the building. It is true that there is no direct evidence of any such agreement with Mr. Salhinger, the original lessee, but it is worthy of note that the latter only a short time after he put up the building sold it to defendant. It is not to be supposed that he would undertake to transfer property which he had no reason to believe that he owned. Indeed, the most rational explanation of his conduct is based upon the theory that the original understanding was that the building might be removed as a "trade fixture."

[3] Moreover, from the fact that said building was erected by the tenant for his own purposes the presumption is in favor of his right to remove it. "With respect to buildings erected by a tenant the rules are more favorable to the tenant than to persons in other relations. . . . The building is deemed to be personal property during the life of the lease, and becomes real estate upon the expiration or surrender thereof without removal." (11 R. C. L., p. 1082.)

[4] The trial court was therefore justified in finding that the building was a trade fixture, and since it further appears that "the removal could be effected without injury to the premises" and it had not become "an integral part of the premises," the tenant had the right to remove it during the continuance of the term. (Sec. 1019, Civ. Code; *Alden v. Mayfield*, 33 Cal. App. 684 [166 Pac. 377].) This would follow independent of the express agreement for its removal made by Gibson and defendant.

It is to be observed that the finding of the trial court brings the case within said section 1019 rather than section 1013 of the Civil Code. To make the latter applicable it would be necessary to show an agreement to that effect between the original parties to warrant the removal, whereas a "trade fixture" under the conditions specified in said section 1019 may be removed without such agreement.

[5] The question then arises whether the removal was made within the term. Herein it becomes material to state that before the expiration of the written lease it was superseded by an executed oral agreement creating a new tenancy at an advanced rent with a special agreement for the removal of the property. The removal was made while this substituted lease was in force, and since the parties had

56 Cal. App.—36

stipulated to that effect, the tenant could remove the building. (*Wadman* v. *Burke*, 147 Cal. 351 [3 Ann. Cas. 330, 1 L. R. A. (N. S.) 1192, 81 Pac. 1012].) If there had been no such agreement the tenant would be precluded from disturbing the landlord's possession. (*Watriss* v. *First Nat. Bank*, 124 Mass. 571 [26 Am. Rep. 694]; *Earle* v. *Kelly*, *supra.*)

[6] Of course, it cannot be disputed that it was competent for the parties to substitute the executed parol agreement for the written lease. (Sec. 1698, Civ. Code; *Robinson* v. *Rispin*, 33 Cal. App. 536 [165 Pac. 979].) To establish the novation it was necessary and proper to receive in evidence the conversations between Gibson and defendant in reference to the new lease and the admissions of the former as to his agreement for the removal of the building. (*Tench* v. *McMeekan*, 17 Cal. App. 14 [118 Pac. 476]; subd. 4, sec. 1870, Code Civ. Proc.; *Robinson* v. *Rispin*, *supra.*)

[7] Some objection is made to the sufficiency of the evidence that Gibson was authorized to represent appellant in the execution of the lease. As to this, however, it hardly becomes her to take this position, in view of the fact that she accepted the rent for many years without question and acquiesced in the possession and use of the building by respondent during the entire period. She must have known also of the terms of the lease. It was a matter of record, and, besides, it is almost inconceivable that she did not inquire of Gibson concerning it. Her conduct, indeed, amounts to a ratification of his authority. Moreover, the court was justified in the conclusion that he was her agent for the purpose of renting the property. She testified that Gibson was a man of integrity: "Well, I would take his word that little I had to do with it; he collected the rents and sent them to me; that's all I had to say." Furthermore, that she did not go over there and make any terms with the tenants: "I didn't go, but he wouldn't make any terms without speaking to me." But there is no doubt that he did make terms by the execution of said lease and, therefore, according to the admission of appellant, it is a fair inference that he had her consent. But if we consider her equivocal statements as a denial that she authorized Gibson to lease the property, more importance should be attached to

the circumstance that this man of integrity did represent himself as her agent, and did actually execute this instrument as her attorney in fact and she never repudiated nor questioned his right to do so. Such situation would warrant the conclusion that he was acting within the scope of his authority.

After a careful reading of the entire record we are satisfied that the conclusion of the lower court is just and should be upheld.

The judgment is therefore affirmed.

Finch, P. J., and Hart, J., concurred.