## STREET v. SMITH BROS. GRAIN CO.
### (No. 10084.)

(Court of Civil Appeals of Texas. Fort Worth. Oct. 20, 1923. Rehearing Denied Nov. 24, 1923.)

1. **Venue** ⊚⊃7—**Contract to deliver oats authorized suit for breach thereof in buyer's county.**

A contract to deliver oats, which provided that differences between buyer and seller were to be adjusted in buyer's county, authorized suit for breach thereof in buyer's county; it being a contract in writing to be performed in buyer's county, and within exception of Rev. St. art. 1830, conferring rights on defendants to be sued in county of residence.

2. **Accord and satisfaction** ⊚⊃1—**Novation** ⊚⊃ 1—**Venue** ⊚⊃7—**Buyer's oral agreement to accept seller's mere promise to pay for oats undelivered not discharge of written contract.**

Where written contract for delivery of oats provided that differences arising thereon were to be adjusted in buyer's county, parol contract that in consideration of buyer's cancellation of written contract seller promised to pay buyer 10 cents per bushel for oats contracted for was not an accord or satisfaction or a novation, entitling seller to be sued in his own county as on a contract not in writing, and therefore not within exception of Rev. St. art. 1830.

Appeal from District Court, Tarrant County; Brua Young, Judge.

Action by Bert K. Smith and another, doing business as the Smith Bros. Grain Company, against J. C. Street. From an order overruling his plea of privilege, defendant appeals. Affirmed.

Goree, Odell & Allen and Ernest May, all of Fort Worth, for appellant.

Smith & Smith, of Fort Worth, for appellee.

CONNER, C. J. This suit was instituted on June 4, 1921, by Bert K. Smith and J. A. Simons, Jr., doing business under the firm name of Smith Bros. Grain Company, against J. C. Street, alleged to be a resident of Mills county, Tex. The plaintiff alleged that during the month of May, 1919, the plaintiff and defendant entered into written contracts whereby the defendant sold and promised to deliver to plaintiff, at specified dates and in specified quantities, f. o. b. Texas common points, No. 3 red oats in bulk at a specified rate per bushel; terms being upon destination weights and grades. It was alleged that the contracts provided that the weights and grades found upon weighing and inspection to exist at destination would govern, and that "any differences arising between buyers and sellers who are parties to this contract are to be adjusted at Fort Worth, Texas."

It was further alleged that the defendant never fulfilled any of the obligations of the several contracts mentioned, and had refused to ship to the plaintiff any of the commodities called for, all to the plaintiff's damage $3,000, with interest thereon at the legal rate of 6 per cent. per annum from the 6th day of August, 1919, for all of which plaintiff prayed judgment.

On August 1st thereafter the defendant, Street, filed his plea of privilege to be sued in Mills county. The plea alleged that the defendant had at all times mentioned resided in Mills county and that—

"None of the exceptions to exclusive venue in the county of one's residence mentioned in article 1830 or article 2308 of the Revised Statutes exist in this cause; that this suit does not come within any of the exceptions provided by law in such cases authorizing it to be brought or maintained in the county of Tarrant, state of Texas, or elsewhere outside of said county of Mills; that, if there be any allegations in plaintiff's original petition which if true would subject defendant to be sued in Tarrant county, Tex., said allegations were fraudulently made for the purpose of procuring and retaining jurisdiction in said county."

The plaintiff controverted the plea, and the court, after having heard the evidence, overruled it, and the defendant, Street, has appealed from such order.

On the hearing the plaintiff offered in evidence written contracts for the purchase of oats, which, in terms, substantially conform to the contracts as alleged in the petition. The defendant thereupon offered in evidence a petition filed in a suit previously instituted in Tarrant county by the Smith Bros. Grain Company, which, after setting out the written contracts for the purchase of the oats that are set out in the petition in the present suit, contained these further allegations:

"That on or about August 8, 1919, defendant telephoned plaintiffs, saying that on account of weather conditions it had been impossible to make deliveries of the oats contracted for delivery during the months of June and July, and for and in consideration of the agreement to cancel the aforesaid contracts defendant bound and obligated himself and promised and agreed to pay to plaintiff an amount equal to 10 cents per bushel for the oats contracted for; that by the terms of said written contract the place for payment of said 10 cents per bushel was in Fort Worth, which is in Tarrant county, Tex."

The prayer was for the recovery of $2,700 with interest at the rate of 6 per cent. per annum from September 1, 1919.

The defendant further proved that in said former suit he had presented his plea of privilege, which it was agreed was in due form, to be sued in Mills county, and that in reply thereto the plaintiff had filed a controverting affidavit which contained the following declarations:

"That this suit is for an agreed penalty of 10 cents per bushel on the oats contracted for, it being alleged in plaintiff's petition that defendant failed to comply with his contract, and that it was agreed between the parties that said contracts would be canceled on such basis; wherefore this suit is for an adjustment of differences arising between plaintiff and defendant, parties to the contracts above set out."

It was admitted for the purpose of the hearing that the defendant, Street, in fact lived in Mills county at all times involved, and that the liquidated damages alleged in the original petition of the plaintiff and in the controverting affidavit in the former suit of Smith Bros. Grain Company against J. C. Street had not been paid, and that, upon the filing of defendant's plea of privilege in said former suit, the plaintiff had taken a nonsuit.

[1] One of the exceptions to article 1830, Rev. Statutes, conferring upon inhabitants of this state the right to be sued in the county of his residence, provides that—

"Where a person has contracted in writing to perform an obligation in any particular county, in which case suit may be brought either in such county, or where the defendant has his domicile."

In the cases of Patterson v. Smith Bros. Grain Co. (Tex. Com. App.) 252 S. W. 1058, and Turner v. Riverside Cotton Oil Co.

(Tex. Com. App.) 252 S. W. 1060, respectively, our Supreme Court had occasion to pass upon the question of whether contracts of the character set forth in the petitions referred to in this case came within the quoted exception to the general statute, and after a review of the authorities it held that such contracts were within that exception. Under those decisions the written contracts declared upon in this case, and as set forth in the petition formerly filed in the suit dismissed, undoubtedly authorized the institution of the suits in Tarrant county; so that we will not undertake to discuss the contention of appellant in the present case that the terms of the written contracts did not authorize the suit in Tarrant county,, but, on the authority of the cases referred to, we rule against appellant as to that contention.

[2] However, appellant further insists that the petition and controverting affidavit in the former suit establishes the fact that after the breach, if any, of the written contracts for the sale of the oats, an adjustment had been made and a contract entered into, which, in effect, superseded and abrogated the written contracts, and that, inasmuch as such new or abrogating contract was not in writing, the case was not within the exception quoted to the general statute, and he is therefore entitled to be sued in Mills county where he resides. It thus becomes necessary for us to determine the character of the parol contract as set forth in the original petition and in the plaintiff's controverting affidavit in the first suit instituted by the plaintiff in this case.

That the contract was not in writing is undisputed. It cannot be urged effectively as an accord and satisfaction for it was agreed that appellant did not comply with its terms by paying the 10 cents per bushel as specified in that contract. In support of this conclusion, it is said in 1 Corpus Juris, p. 523, § 1:

"An accord is an agreement whereby one of the parties undertakes to give or perform, and the other to accept in satisfaction of a claim, liquidated or in dispute, and arising either from contract or from tort, something other than or different from what he is or considers himself entitled to; and a satisfaction is the execution of such agreement."

In the next section on the same page it is said that—

"Where an accord has been executed it operates as a complete bar to an action on the original claim."

The same author in the same volume, on pages 530 and 531, § 17, says:

"To constitute a bar to an action on the original claim or demand the accord must be fully executed, unless the agreement or promise, instead of the performance thereof, is accepted in satisfaction. An accord without satisfac-

tion is no bar, because there is no consideration and no mutuality to support it; the creditor has no means of obtaining satisfaction by enforcing it, and of course derives no satisfaction directly or indirectly from it."

In section 18, p. 532, the author further says:

"An accord is executory so long as something remains to be done in the future. It is sufficiently executed only when all is done which the party agrees to accept in satisfaction of the pre-existing obligation."

Such, also, is the effect of the Texas decisions. For instance, it is said in the case of Overton v. Conner, 50 Tex. 113:

"Certainly no one can insist that a mere promise, without performance, unless it had been expressly so agreed, will satisfy or discharge a pre-existing contract."

To the same effect are the cases of Railway Co. v. Gordon, 70 Tex. 80, 7 S. W. 695, and Camden Fire Ins. Ass'n v. Baird (Tex. Civ. App.) 187 S. W. 699.

It will be noted that in one of the quotations from 1 Corpus Juris, § 17, p. 530, the statement of the author that "to constitute a bar to an action on the original claim or demand the accord must be fully executed" is accompanied with the limiting expression "unless the agreement or promise, instead of the performance thereof, is accepted in satisfaction." In which case the implication is that the accord and satisfaction would be effective. It is likewise so stated, in effect, in the case of Insurance Association v. Baird, above cited, but we think that when such limiting fact is shown, that is, when it appears that the new agreement or promise, instead of the performance, is accepted in satisfaction that the new agreement is more properly termed a novation. The distinction is pointed out by the author of 20 R. C. L. p. 361, § 2, where it is said:

"Accord and satisfaction is distinguished from novation, in that novation is a mode of extinguishing one obligation by another, that is, the acceptance of a new promise or a new debtor in satisfaction of a previously existing claim, while in the case of an accord and satisfaction it is not the new promise itself but the performance of the new promise that is accepted as a satisfaction."

The question then arises in this case as to whether the contract as set up in the petition and the plea of privilege by the defendant in the first suit amounts in legal effect to a novation or new contract which discharged the original legal contracts for the purchase of the oats. To have this effect, however, it must appear that such was the intention of the parties to the new contract. Thus it is said by the author last above quoted (20 R. C. L. p. 366, § 8):

"In order to affect a novation there must be a clear and definite intention on the part of all concerned that such is the purpose of the

agreement, for it is a well-settled principle that novation is never to be presumed. The intention of the obligor that the existing debt should be discharged by the new obligation must be concurred in by both debtor and creditor. The point in every case, then, is did the parties intend by their arrangement to extinguish the old debt or obligation and rely entirely on the new, or did they intend to keep the old alive and merely accept the new as further security, and this question of intention must be decided from all the circumstances. The existence of such an intention may, of course, be found although there is nothing positive in the agreement."

The same author, in section 14, p. 371, says:

"In order to constitute a novation such as will release the obligation of the original debtor to his creditor it is necessary that there should be a new and valid contract which, as agreed between the parties, extinguishes the assumed existing contract or obligation. Hence, it must appear that the creditor unconditionally released the original debtor and accepted the third person in his stead; and where the parties count on the old contract as subsisting it certainly has not been novated. The discharge of the old debt must be contemporaneous with and result from the consummation of an arrangement with the new debtor."

The quotations from the above author are supported by citations of numerous authorities in the notes, and we think the law as thus expressed is fully supported by your own decisions. See Overton v. Conner, 50 Tex. 113; Ry. Co. v. Gordon, 70 Tex. 80, 7 S. W. 695; Fire Ins. Ass'n v. Baird (Tex. Civ. App.) 187 S. W. 699.

Applying the principles so stated, we feel unable to say that the trial court was in error in overruling the appellant's plea of privilege now under consideration. The evidence in support of the plea fails to show that at the time of the making of the parol contract there was any independent consideration paid by appellant therefor. At most, as stated, there was the mere promise on appellant's part that he would pay 10 cents per bushel for a given number of bushels of oats undelivered, and appellee's promise to cancel the written agreements. The language of the parol contract as alleged is that—

"In consideration of the agreement (on the part of appellant) to cancel the aforesaid contracts (for the purchase of the oats), defendant (appellant here) bound and obligated himself and promised and agreed to pay to plaintiff an amount equal to 10 cents per bushel for the oats contracted for."

It is to be implied, we think, from the very words of the parol contract, that appellant's agreement to cancel the written contracts for the purchase of the oats was upon the condition that appellant pay 10 cents per bushel for the oats contracted for.

This, it is undisputed, he has not done, and there is nothing in the agreement or in the evidence before us, offered in support of the plea of privilege, from which we can say that it clearly appears that it was the purpose of the appellee to accept appellant's mere promise to pay as a complete discharge of its rights under the written contracts.

We accordingly conclude that neither upon the theory of an accord and satisfaction nor upon the theory of a novated or substituted contract can we say that the trial court erred in overruling appellant's plea of privilege.

The judgment below is accordingly affirmed.

### On Motion for Rehearing.

Appellant renews with greater vigor the contention that the written grain contracts involved in this suit are insufficient in legal effect to authorize appellee's suit in Tarrant county. That the written contracts were within exception 5 to article 1830, Rev. Statutes, seemed so plain that we did not dwell upon this phase of the case in our original opinion. But, in deference to the earnestness of counsel for appellant, we will add to the quotation therefrom noted in our original opinion that the contracts provided for a price per bushel "basis f. o. b. Tex. c/p for shipment * * * terms destination weights and destination grades." By the terms of the contracts the grade of oats purchased was "No. 3 or better" and "exchange and inspection fees to be paid by shipper." It seems evident that by the terms of the written contracts the grades and weights of the oats to be shipped were determinable in Tarrant county, and the contracts hence partly performable in this county, and conferred upon appellee under said exception 5 to article 1830, the right to sue in the court of the trial. At least we are unable to distinguish this case from cases cited in our original opinion, and particularly from the case of Scott & Mayhall v. Lubbock Grain & Coal Co. (Tex. Com. App.) 252 S. W. 164, cited in the case of Patterson v. Smith Bros. Grain Co. (Tex. Com. App.) 252 S. W. 1058, noted in our original opinion.

Counsel for appellant makes this further contention:

"It seems to us that the holding of the Supreme Court in the case of International Travelers' Association v. Branun, 109 Tex. 543, 212 S. W. 631, is decisive that the provision in the alleged written contracts for the adjustment of differences in Tarrant county, Tex., is void as an attempt to deprive other courts of venue of any suit upon the contracts, and the cause should be reversed and remanded with instructions."

The case referred to in the quotation was decided by our Supreme Court. It was held in that case that a stipulation between an

accident insurer and its policy holder, for exclusive venue in the county of the insurer's residence, was void as against public policy. We do not think, however, that the case controls the one before us. There the stipulation between the contracting parties was direct and specific in its object to take away rights conferred upon the insured by the venue statute, but in the case before us the contracts in material particulars have no reference to venue. The object of these contracts is to secure grain of certain grades and weights in stipulated amounts delivered in Tarrant county, and thereby, regardless of the stipulations relating to adjustment of differences, the appellee had the right to sue in the latter county as an indirect consequence. We know of no law which specifically confers the right of making a contract such as was declared void in the Supreme Court decision. The Legislature, in exception 5 to article 1830, expressly recognizes written contracts performable in counties as agreed upon and expressly declares that where such a contract is performable in "any particular county" then suit may be brought "in such county," or where the defendant has his domicile. To give the construction and effect contended for to the case of International Travelers' Association v. Branun, 109 Tex. 543, 212 S. W. 631, cited in appellant's quotation, would be to destroy the force and effect of exception 5 to the general venue statute, a consequence we cannot think was intended by our Supreme Court.

Motion for rehearing will accordingly be overruled.