**STREET v. SMITH BROS. GRAIN CO.**
(No. 11162.)

(Court of Civil Appeals of Texas. Fort Worth. May 2, 1925. Rehearing Denied May 30, 1925.)

1. **Sales ⬤=89—Evidence held to show that contract for delivery of oats was changed by subsequent agreement to ship at later date.**

In action to recover damages for failure to deliver oats at a certain time, evidence held to show that contract for delivery was altered by subsequent agreement to ship at a later date.

2. **Sales ⬤=89—Penalty for nonperformance of contract held a sufficient consideration to support new contract.**

Penalty, agreed to be paid for failure to deliver oats at a certain time, held a sufficient consideration to support change in contract by provision for delivery at later date.

3. **Contracts ⬤=254—Written contract may be canceled by verbal agreement.**

Parties, who have entered into a written contract, may subsequently agree to its rescission or cancellation, and enter into another contract either verbally or in writing.

4. **Sales ⬤=89—Peremptory instruction for plaintiff held error, where there was evidence that contract alleged to have been breached was superseded by agreement negotiated over telephone.**

In action to recover damages for failure to deliver oats at a certain time, peremptory instruction to find for plaintiff held error, when there was evidence tending to show that contract for delivery had been superseded by subsequent agreement negotiated over telephone, though written confirmation of such agreement had not been signed.

5. **Trial ⬤=140(1)—Weight to be given testimony of witness is question for jury.**

Weight to be given testimony of witness is question for jury.

6. **Sales ⬤=181(9)—Evidence, referring to embargo of United States government on shipments of grain, held improperly excluded.**

Telegrams, letters, and testimony, referring to embargo by United States government on shipments of grain, held improperly excluded in action for damages for failure to deliver oats at a certain time, where consignor was obligated only to place oats f. o. b. station from where oats were to be shipped.

On Appellee's Motion for Rehearing.

7. **Sales ⬤=87(3)—Evidence held to show that consignor was obligated only to deliver oats f. o. b. the station from where oats were to be shipped.**

Evidence in action for damages for failure to deliver oats at a certain time held to show that consignor was obligated only to deliver f. o. b. station from where oats were to be shipped.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Action by the Smith Bros. Grain Company against J. C. Street. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

See, also, 255 S. W. 778.

Goree, Odell & Allen, and Ernest May, all of Fort Worth, for appellant.

Smith & Smith, of Fort Worth, for appellee.

BUCK, J. Bert K. Smith and J. A. Simons, Jr., residents of Tarrant county, doing business under the firm name of Smith Bros. Grain Company, sued J. C. Street, a resident of Mills county, alleging that from May 20 to May 31, 1919, plaintiffs and defendant entered into contracts in writing, by plaintiffs, and the confirmation of which was agreed to in writing by defendant, whereby plaintiffs purchased of defendant 29,000 bushels of No. 3 or better red oats, at an average price of 55 cents per bushel, for shipment to Fort Worth during the months of June and July. It was alleged that defendant never fulfilled these contracts, and wholly failed to ship to plaintiffs any of the oats contracted for, and that plaintiffs were at all times, within which defendant had to ship said oats ready, willing, and able to take and pay for same. Plaintiffs prayed for damages in the sum of $3,000.

Defendant answered by a general demurrer and a general denial, and further pleaded that he did sell to plaintiffs the oats mentioned in plaintiffs' petition, and agreed to deliver said oats to plaintiffs during the months of June and July, 1919, said agreement of sale being made at Goldthwaite, Mills county, and at the time of the making thereof it was understood and contemplated by and between defendant and plaintiffs that the oats so sold were to be procured by defendant from farmers in the vicinity of Goldthwaite; that on or about August 6, 1918, plaintiffs for a good and valuable consideration canceled the aforesaid contracts and released defendant from all obligations

---

⬤=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

thereunder, and that therefore plaintiffs are precluded from maintaining this suit.

Defendant further pleaded a novation and an accord and satisfaction of the aforesaid contracts, by reason of the following facts, to wit: That during the months of June and July excessive rains in the vicinity of Goldthwaite prevented the farmers in said vicinity from harvesting their grain and delivering the same to defendant for such sale and delivery; that on or about August 1, 1919, defendant telephoned to plaintiffs such facts and of his consequent inability to deliver said oats, and the plaintiffs released defendant from the obligations incurred by him under the said contracts of sale, and entered into a new contract with defendant that defendant should deliver, and the plaintiffs would accept delivery of, said oats during the month of August, and defendant agreed to pay 5 cents per bushel as liquidated damages for failure to make delivery in June and July; that by the terms of said substituted contract plaintiffs agreed to pay the defendant for the oats to be delivered the sum of 60 cents per bushel, from which the defendant agreed, as liquidated damages, to deduct from the invoice 5 cents per bushel; that, on or about August 6th, plaintiffs confirmed said substituted contract by an instrument in writing; that within the next few days, after the last-stated agreement, defendant procured and was ready, able, and willing to deliver the quantity of oats called for by said substituted contract, and he communicated said ability by telephone to plaintiffs on or about August 12th, and that said oats had been loaded on the cars at Goldthwaite, f. o. b., but there was an embargo on said shipment to Fort Worth and defendant requested instructions from plaintiffs as to what should be done in the premises; that plaintiffs requested defendant to procure from the railway company, then under the control of the federal government, a permit to move the same, but he was unable to secure said permit at that time; that on or about August 25th plaintiffs communicated with defendant by telephone and proposed to him that, in view of their inability to accept said shipment of oats during the month of August, defendant should ship said oats during the month of September at a price of 58 cents per bushel, from which should be deducted 5 cents per bushel for failure to ship during the months of June and July, as provided for in the original contract entered into between the parties; that defendant agreed to said proposal, and that said plaintiffs confirmed said telephone conversation by a subsequent letter, and that defendant, on or about August 26th to 29th, confirmed his said acceptance by letter and duly placed the same in the mills and said letter was delivered to plaintiffs at Fort Worth on or before September 1, 1919; that on said last-named date, plaintiffs wrote to defendant repudiating their said agreement and demanding of him the aforesaid penalty of 5 cents per bushel. Defendant pleaded for damages by reason of the alleged failure of plaintiffs to carry out their contract for the acceptance of said oats in September, but as the plaintiffs subsequently pleaded limitation as to this claim, and defendant in this court has admitted, that said plea of limitation is good, we will not further consider the cross-action.

After the introduction of the evidence, the court instructed the jury peremptorily to find for plaintiffs against defendant in the sum of $2,700, with interest thereon at 6 per cent. from August 1, 1919, to the date of the judgment, being February 14, 1924. From the judgment entered on the verdict returned, the defendant has appealed.

The evidence shows that plaintiffs purchased from defendant, and defendant agreed to deliver at Goldthwaite, f. o. b., for shipment during the months of June and July, 1919, 29,000 bushels of oats, and that defendant during said time delivered 1,800 bushels, leaving 27,200 bushels undelivered. On August 1st, Bert K. Smith called defendant over the telephone and asked him what he proposed to do with reference to fulfilling his contract of shipment. Street explained to him that on account of the heavy rains in and around Goldthwaite that the farmers had been unable to have their oats threshed and they agreed that defendant should have August to make the shipments in, and defendant should ship said oats at the contract price of 60 cents per bushel and deduct from the invoice 5 cents per bushel. The market price of oats at that time was 65 cents to 70 cents per bushel, and by this agreement it was understood and agreed that plaintiffs were entitled to and were allowed a penalty of 10 cents per bushel on the oats which had not been shipped, and that 5 cents of this amount was to be allowed by defendant shipping the oats at 60 cents per bushel instead of 65 cents, the market price, and 5 cents to be deducted therefrom by defendant on the invoice. Mr. Street testified that Mr. Smith asked him if he would defer shipment until about the 15th and defendant agreed thereto, Mr. Smith saying that on account of the elevators being full, and having so many cars on the track, that he could not receive them for awhile, or until about August 15th. Street testified that about that time he had his warehouse full of oats, probably 15,000 or 20,000 bushels, and he had enough more oats bought to fill the contract.

On August 6, 1919, Mr. Smith wrote Mr. Street the following letter:

"Fort Worth Tex., August 6, 1919.

"Mr. J. C. Street, Goldthwaite, Texas—Dear Sir: We inclose herein confirmation covering the purchase of 27,200 bushels of bulk No. 3 red oats at 60 cents per bushel, basis f. o. b. Goldthwaite, for August shipment.

"We also inclose debit memo herein showing the cancellation of a similar amount of oats that you sold us for June and July shipment at from 54 cents to 57 cents per bushel bulk f. o. b. We trust that you .will soon begin shipping these oats, scattering them out through August. It is understood and agreed that you will bill out the oats at 50 cents per bushel until 27,200 bushels that you are due us have been allowed. It is further understood that these oats shipped in August are to grade No. 3 and that no other grades will apply on contract, except at such docks as can be agreed upon between us. There is a very poor demand here now for No. 4 and sample grade oats.

"We ask that you please accept the inclosed duplicate confirmation and return same to us at once.

"Yours very truly,
"Smith Bros. Grain Company,
"Per. B. K. S."

Mr. Smith testified further that the statement in the letter that the oats should be billed out by defendant at 50 cents per bushel was a mistake, and that it was agreed that the oats should be billed out at 60 cents per bushel. According to the agreement made in August, probably about August 23d, over the telephone, between Smith and Street, for the shipment of oats in September, it was agreed that a further penalty of 2 cents per bushel should be charged, and that defendant should ship the oats during September at 58 cents per bushel, with a further reduction of 5 cents per bushel on the invoice. On August 25th, the plaintiffs wrote defendant as follows:

"We have to-day returned to us our contract of August 6th, which is not at all satisfactory. * * * We are returning the confirmation to you, as per our original agreement, asking that you sign and return same to us; otherwise, we will, on September 1st consider the contract canceled, and will be forced to buy in for your account the oats that are still due us."

Mr. Street testified that he did not understand the letter reading that way, and that he did not know why he should have returned the contract of August 6th on August 25th. The evidence further shows that plaintiffs filed a suit in the Seventeenth judicial district court, in which they asked for damages by reason of the alleged failure of defendant to deliver the oats at the price and in the time stipulated. Upon a plea of privilege being interposed by defendant to be sued in Mills county, the plaintiffs dismissed their suit and filed this suit in the Forty-Eighth judicial district court.

The matter of the substituted contract for the August shipment was conducted altogether by Bert K. Smith and J. C. Street. Bert K. Smith testified:

"When he said he had not been able to ship the oats on account of the rain, we agreed on a cancellation of the old contract at a 10-cent penalty—10 cents per bushel penalty—and then in the conversation, we agreed to buy an additional 27,200 bushels from him at a price of 60 cents, with the definite understanding that he was to ship the oats and bill them to us at 60 cents and deduct from his invoice 5 cents of the penalty that he had agreed to pay from his drafts when he made the actual shipments of the oats."

Smith made a debit memorandum, a copy of which was attached, and reads as follows:

"Fort Worth, Texas, 8/16/19.
"J. C. Street, Goldthwaite, Texas:

"Original contract called for 29,000 bu.
"Shipped ................. 1,800 "
Balance .............. 27,200 "

"27,200 bu. canceled at 10¢ per bu. dock.
"2,720.

"Smith Bros. Grain. Co.
"B. K. S."

Smith further testified:

"The 10 cents penalty agreed on with Mr. Street on August 6th, in the telephone conversation of that date, was to represent the difference in the market value of the oats at the time we purchased them, and at that time. The 10 cents a bushel penalty was to be paid by Mr. Street agreeing to sell us a like amount of oats for August shipment, at 60 cents per bushel, which was from 5 to 10 cents a bushel under the spot market at that time, and he was to pay us the balance of what he owed us by deducting 5 cents a bushel from his invoices on the oats, which he was to ship in August."

On the same date, the plaintiffs wrote the defendant as follows:

"Fort Worth, Texas, August 6, 1919.
"Mr. J. C. Street, Goldthwaite, Texas—Dear Sir: We inclose herein confirmation covering the purchase of 27,200 bushels of bulk No. 3 red oats at 60 cents per bushel, basis f. o. b. Goldthwaite, for August shipment.

"We also inclose debit memo herein showing the cancellation of a similar amount of oats that you sold us for June and July shipment at from 54 cents to 57 cents per bushel, bulk f. o. b. We trust that you will soon begin shipping these oats, scattering them out through August. It is understood and agreed that you will bill out the oats at 50 cents per bushel until 27,200 bushels, that you are due us, have been allowed. It is further understood that these oats shipped in August are to grade No. 3, and that no other grades will apply on contract, except at such docks as can be agreed upon between us. There is a very poor demand here now for No. 4 and sample grade oats.

"We ask that you please accept the inclosed duplicate confirmation and return same to us at once.

"Yours very truly,
"Smith Bros. Grain Company,
"BKS—m. Encl. Per B. K. S."

[1-3] Appellant urges that the contract for the August shipment was a novation, and an accord and satisfaction. The appellees deny that the contract for the August shipment, and subsequently for the September shipment, constituted a novation of the contract for the June and July shipments. It is fur-

ther contended that the subsequent agreement did not constitute an accord and satisfaction, but merely an accord without a satisfaction. Be that as it may, we believe that the contract for shipments subsequent to July constituted a change in the contract first made as to the time when the delivery was to be made, and that such contract, agreed upon between the parties, cannot be held invalid for want of consideration. The consideration for the change was the penalty demanded of the defendant below, and his agreement to pay such penalty, by a reduction of the price of oats subsequently to be shipped. Parties, who have entered into a written contract, may subsequently thereto agree to a rescission or cancellation of the contract theretofore made, and enter into another contract, either verbally or in writing. See, Branch v. Wafford (Tex. Civ. App.) 254 S. W. 389, affirmed by the Supreme Court in 267 S. W. 261; Conlan v. Spokane Hardware Co., 117 Wash. 378, 201 P. 26; Roberts v. Mills, 56 Cal. App. 556, 205 P. 872; Ford v. Miller, 149 Ark. 443, 232 S. W. 604; Thompson v. Western Casket Co., 219 Ill. App. 184; Commissioners of Lewes v. Breakwater Fisheries Co., 13 Del. Ch. 234, 117 A. 823; McDonald v. Whaley (Tex. Com. App.) 244 S. W. 596; Black on Rescission and Cancellation, p. 1236, § 524; 24 Cyc. p. 912; 3 Elliott on Contracts, p. 10.

[4, 5] We think also the modification or change in the contract for the August shipments, providing that the shipments might be made in September, is not wanting in consideration, inasmuch as that contract called for an additional penalty, to be paid as *provided for the August shipments, out of the price charged for the oats.* Apparently the only claimed reason why plaintiffs refused to accept the shipments in September, was that the defendant did not return to the plaintiffs the confirmation of the contract, changing the time of the shipment from August to September, signed by the defendant. This was a controverted issue in the testimony. Mr. Smith, testifying for plaintiffs, claimed that the confirmation sent out by him to the defendant was returned without the defendant's signature. Mr. Street testified:

"I then got Mr. Smith's confirmation for the September contract. I don't know whether it is one of the confirmations that have been introduced in evidence here or not. It was on one of his regular printed forms of confirmation. When he first sent me the confirmation, I think Mr. Smith had failed to sign his name to it, and so I returned that confirmation for him to sign and send to me, and then he returned it to me for my signature, and just as quick as I got it, after the telephone conversation, I signed it and returned it to him; that was somewhere about the 29th of August."

As to who was telling the truth about this was a question of fact for the jury. More-

over, it does not appear from the statement of facts, or otherwise in the record, that the confirmation, signed by the parties, constituted the contract, of which it was evidence, but the contract as made, verbally or over the telephone, was the contract, and apparently such verbal contract was enforceable even though it had not been reduced to writing and signed by the parties. We are of the opinion that the court erred in giving the peremptory instruction, and for this error the judgment below will be reversed and the cause remanded.

Appellant urges that he was excused for his failure to ship the oats during the latter part of August by reason of the embargo placed on such shipments by the government. He cites in support of this contention the cases of Allanwilde Corporation v. Vacuum Co., 248 U. S. 377, 39 S. Ct. 147, 63 L. Ed. 312, 3 A. L. R. 15. In this case, the Vacuum Company filed a libel against the Allanwilde, a sailing vessel, to recover prepaid freight for the transportation of a cargo of oil designated for ports in Europe. The bill of lading provided that full freight to destination should be paid upon the receipt of the goods by the carrier and should be fully earned at that time. After the vessel had started she encountered a storm and it became necessary to return to the New York harbor for repairs. After the repairs were finished, clearance was refused by the government and the vessel was unable to sail. The Circuit Court of Appeals certified to the Supreme Court of the United States questions, among which was:

"Was the adventure frustrated, and was the contract evidenced by the charter party and by the bill of lading issued to the oil company dissolved, so as to relieve the carrier from further obligation to carry the oil?"

The Supreme Court answered this question in the affirmative. The bill of lading provided that:

"Full freight to destination, whether intended to be prepaid or collected at destination, and all advance charges * * * are due and payable to (the Allanwilde Transport Corporation) upon the receipt of the goods by the latter * * * and any payment made * * * in respect to the goods * * * shall be deemed fully earned and due and payable to the carrier at any stage before or after loading of the service hereunder without reduction (if unpaid), or refund in whole or in part (if paid), goods or vessel lost or not lost, or if the voyage be broken up."

Thus it appears by the terms of the contract, as shown in the bill of lading, that the carrier was not liable for freight already paid for if the voyage should be "broken up."

Appellant further complains of the refusal of the trial court to admit in evidence certain telegrams exchanged between the parties, and a letter written to defendant by

plaintiffs, and certain testimony of defendant. They all are with reference to an embargo by the United States government on shipments of grain from Goldthwaite to Fort Worth. He urges that the evidence was admissible, and that if the failure to make the shipment in August was caused by the embargo, judgment should have been rendered for him instead of for the plaintiffs. The two telegrams and letter are as follows:

"Goldthwaite, Tex., August 13, 1919.
"Smith Bros. Grain Co., Fort Worth, Texas. Two cars ready to go embargoed what shall I do.                    J. C. Street."

"August 13, 1919.
"J. C. Street, Goldthwaite, Texas. Have your agent wire Santa Fé agent here to grant permit.          Smith Bros. Grain Co."

"Fort Worth, Texas, August 13, 1919.
"Mr. J. C. Street, Goldthwaite, Texas—Dear Sir: We confirm exchange of wires with you today in reference to the embargo on shipments to Fort Worth. The manner in which permits are to be secured would be through your agent and the agent of his line at Fort Worth. You could have your agent wire the Santa Fé agent at Fort Worth, who would immediately issue the permit wanted. We believe that the proper thing to do would be to have your agent wire the Superintendent of the Santa Fé, who will take the matter up with the agent there, who will grant the permit.
"Please advise us if this method does not work, and will see what we can do further.
"Very truly yours,
"Smith Bros. Grain Company,
"Per B. K. S."

The first telegram was offered in support of defendant's testimony that on August 13, 1919, he sent to plaintiffs a certain telegram, and has identified this as the telegram sent. He had pleaded that he was prevented from shipping in August by reason of the embargo. The objection to the introduction of this evidence was that it was self-serving and incompetent and immaterial, and that if the facts stated in said telegram were true, the defendant would not be excused from the breach. The answer to this telegram, as shown above, was not admitted, the same objections being urged to it and to the letter from plaintiffs, except that the evidence was not self-serving, was of course not urged.

[6] We are inclined to the opinion that this evidence was admissible, on the ground that the defendant merely obligated himself to place the oats f. o. b. at Goldthwaite for shipment to plaintiffs, and did not require the defendant to deliver the oats at Fort Worth, or at any other place than on the cars at Goldthwaite. The authorities are somewhat in conflict as to whether an act of the government, such as an embargo, will excuse a party to a contract from performing it. Generally there exist express provisions in a contract excusing the one, upon whom the burden of performance rests, from performing it, when he is prevented from doing so by acts of God, acts of the government, strikes, etc., and those authorities which hold, in the absence of such provision that the act of God, or the act of the government, etc., excuses a failure to perform, do so upon the theory that the parties impliedly contracted with such a provision in mind. See 13 Corpus Juris, p. 635, § 705; page 641, § 715, and page 646, § 720, together with authorities cited.

But we are inclined to the belief that in this case, where the defendant was obligated only to place the oats f. o. b. at Goldthwaite, that any reason caused by the act of the government which prevented the transportation of the oats, after they had been bought, and especially after they had been placed in the cars at Goldthwaite, would be admissible, and that the court erred in refusing to admit this evidence. The evidence shows that the defendant sent to plaintiffs the following letter:

"Goldthwaite, Texas, Aug. 29, 1919.
"Smith Brothers, Fort Worth, Texas—Dear Sirs: Please send me confirmation for 27,000 bushels oats sold you at 58 cents, basis No. 3 f. o. b. Goldthwaite, Tex., September shipment. I am storing these oats and want to get them out on the proper time.
"Yours truly,          J. S. Street."

The plaintiffs answered the letter as follows:

"Fort Worth, Texas, Sept. 1, 1919.
"Mr. J. C. Street, Goldthwaite, Texas—Dear Sir: We have your letter of August 29th asking us to send you a confirmation on 27,000 bushels of oats at 58 cents per bushel for September shipment, but we are not willing to do this. We have extended these contracts from June until July and from July until August, and we cannot now agree to a further extension. We ask that you mail us your check for five cents per bushel, the amount you agreed to dock from your invoices when we extended the time of shipment into August. We had rather accept this five cents per bushel reduction than to again extend the contracts. We have been just as patient about this matter as we could be and we cannot agree to a further extension.               Yours very truly,
"Smith Bros. Grain Company.
"Per B. K. S."

After this time the price of oats went down, and it is evident that the plaintiffs refused to receive the oats under the contract by reason of this fact.

For the reasons given, the judgment of the trial court is reversed, and the cause is remanded.

On Appellee's Motion for Rehearing.

Appellees urge that we misunderstood or misquoted the record in stating that the place of delivery was Goldthwaite, and assert that the record shows that the prices agreed on were on "basis f. o. b. Texas common points." The statement in our opinion to which reference is made is as follows:

"But we are inclined to the belief that in this case, where the defendant was obligated only to place the oats f. o. b. at Goldthwaite." etc.

In the statement of facts in a number of confirmations, signed by appellees, the statement appears "basis f. o. b. Goldthwaite." We did not decide in our opinion that a novation of the contract for the June and July shipments had been effected by subsequent agreements, but did decide that there was evidence to sustain a finding by the jury that the plaintiff had agreed with defendant, for a sufficient consideration, to extend the time of delivery, first from July to August, and then from August to September, 1919. That if these extensions of the time of delivery were in fact made, that the contracts thereby evidenced superseded and abrogated the original contract. We understand what is meant by a novation, as stated in 20 R. C. L. p. 366, § 8, and page 371, § 14; Street v. Smith Bros. Grain Co., 255 S. W. 778, by this court;. Pierce Fordyce Oil Ass'n v. Woods, 180 S. W. 1181, by this court, writ denied; 29 Cyc. 1130, and authorities cited.

Nor in this statement as to the place of delivery, do we think we are in conflict with our former opinion in Street v. Smith Bros. Grain Co., 255 S. W. 778, or the other authorities cited by appellee.

In Patterson v. Smith Bros. Grain Co., 113 Tex. 147, 252 S. W. 1058, it was shown that Patterson wrote to Smith Bros. Grain Company the following letter:

"Dallas, Texas, July 14, 1920.
"Smith Brothers Grain Company, Fort Worth, Texas—Gentlemen: This will confirm sale to you, to-day, four cars No. 3 red oats, sacked in even weight new bags at 87½ f. o. b. Texas common points, flat billing shipment this week to you at Fort Worth, destination, weights and grades. I thank you for this business.
"Yours very truly,    W. H. Finley.
"For the account of C. E. Patterson, Celeste, Texas."

The evidence further showed that Patterson drew a draft on Smith Bros. Grain Company, payable at Fort Worth, and attached to the bills of lading, and which was paid. Suit was for a shortage in weights. The evidence disclosed that Patterson did not surrender the grain until the drafts were paid and the Commission of Appeals held, on certified questions from this court, that the venue was in Tarrant county, where the grain was in fact delivered. In Street v. Smith Bros. Grain Co. (Tex. Civ. App.) 255 S. W. 778, there was an additional reason given for holding that the county where the grain was to be delivered had venue, for the contract provided that "any difference arising between buyers and sellers, who are parties to this contract, are to be adjusted at Fort Worth, Tex."

[7] But in the instant case, we were not determining the place of venue in which suit might be filed for a failure to deliver, but merely where appellant was required under the contract to deliver the grain under his contract. As to that duty, we held in our former opinion, and hold now, that he was required only to deliver f. o. b. at Goldthwaite.

Motion for rehearing is overruled.